Abe L. HOFFMAN and Florence Hoffman; Sidney Reckler and Sarah Redman Reckler; Edward and Dorothy Hirschfield; Stuart and Irene Fiedelman; Herbert and Tillie Kirschbaum; Shirley K. Storey; Max M. and Florence J. Glaston; Stanley J. Hinson; and Eileen L. Hamley, for themselves and for all others similarly situated, Petitioners and Plaintiffs-Appellees,

v.

The COLORADO STATE BOARD OF ASSESSMENT APPEALS; the Board of Equalization of the City and County of Denver; Jerry Kempf, as Manager of Revenue, and Mike R. Licht, as Deputy Assessor of the City and County of Denver; and the City and County of Denver, Respondents and Defendants-Appellants.

No. 83SA47.

Supreme Court of Colorado,
En Banc.

June 4, 1984.
Rehearing Denied June 25, 1984.

James H. Downey, Goldstein & Armour, P.C., Denver, for petitioners and plaintiffs-appellees.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Billy J. Shuman, Asst. Atty. Gen., Denver, for Colorado State Bd. of Assessment Appeals.

Stephen H. Kaplan, City Atty., Robert F. Strenski, Asst. City Atty., Denver, for The Bd. of Equalization of the City and County of Denver; Denver Manager of Revenue; Denver Deputy Assessor; and the City and County of Denver.

DUBOFSKY, Justice.

The Colorado State Board of Assessment Appeals and the City and County of Denver (Denver) appeal a judgment of the Denver District Court that the Denver assessor improperly increased the 1980 valuation of apartments converted to condominiums in Denver. The court certified as a class all similarly situated condominium owners and ordered that they be granted a property tax refund. Because the statutory scheme for protesting property valuations provides a complete, adequate, and speedy remedy, we conclude that the district court was without jurisdiction to grant equitable relief in the nature of a class action suit to all similarly situated condominium owners and reverse the judgment.

I.

Abe and Florence Hoffman initiated this action by protesting the 1980 valuation of their Denver condominium. The Hoffmans purchased the condominium in 1979 when it was converted from an apartment, which they had rented for ten years, to a condominium. In May 1980, the Hoffmans received a "Notice of Valuation" indicating an increase in the condominium's property tax valuation for tax year 1980.

The Denver assessor in 1980 routinely increased the valuation of condominiums upon their conversion from apartments to condominiums, relying on section 39-1-104(11)(b), 16B C.R.S. (1982).[1] In June 1980, the Hoffmans, on their own behalf and on behalf of all others similarly situated, protested the increased valuation by

---

1. At the time the assessor made the increased valuation, section 39-1-104(11)(b) provided:

"The provisions of subsections (9) and (10) of this section are not intended to prevent the assessor from taking into account, in determining actual value during the intervening years between base years, any unusual conditions in or related to any real property which would result in an increase or decrease in actual value. For the purposes of this paragraph (b), an unusual condition which could result in an increase or decrease in actual value is limited to the installation of an on-site improvement, addition to or remodeling of a structure, change of use of the land, new regulations restricting or increasing the use of the land, or a combination thereof, detrimental acts of nature, and damage due to accident, vandalism, fire, or explosion.

When taking into account such unusual conditions which would increase or decrease the actual value of a property, the assessor must relate such changes to the base year level of values as if the conditions had existed at that time." Ch. 494, sec. 5, § 39-1-104(11)(b), 1977 Colo. Sess.Laws 1728, 1732.

The substantive issue below was whether the conversion of an apartment to a condominium constituted a "change of use of the land," justifying an increased valuation for property tax purposes. The current version of this section specifically states that the "creation of a condominium ownership of real property by the conversion of an existing structure" may result in an increased valuation. Section 39-1-104(11)(b)(II), 16B C.R.S. (1982).

letter to the assessor. The assessor's office denied the Hoffmans relief. The Hoffmans then petitioned for relief, for themselves and for all other owners similarly situated, to the Denver County Board of Equalization, which denied class relief and also denied relief specifically to the Hoffmans.

In August 1980, the Hoffmans appealed the decision of the county board of equalization to the Colorado State Board of Assessment Appeals (BAA). The respondent board of equalization filed a motion to dismiss that portion of the appeal asserting the rights of all others similarly situated. The BAA, noting that the county board of equalization had only denied relief to the Hoffmans, granted the motion and limited its hearing to the Hoffmans' protest of the valuation of their condominium. After the hearing, the BAA concluded that there was no basis for the increased valuation of the Hoffmans' condominium and ordered reduction of the assessed value.

The Hoffmans subsequently filed an action in Denver District Court, along with other named individuals,[2] seeking relief for all similarly situated taxpayers whose property valuations had been increased because of the conversion of apartments to condominiums. The district court, at a hearing upon the plaintiff-condominium owners' motion to certify the matter as a class action, found that the "ruling of the Board of Assessment Appeals, declaring that the reassessment of the Hoffmans' unit was illegal, creates a strong position in equity that all persons similarly situated to the Hoffmans should be accorded relief," and certified the class.[3] Judgment subsequently was entered in favor of the plaintiffs, and the court ordered property tax refunds. The court also awarded costs and attorney's fees to the plaintiffs to be paid from the refunds. The issue before us is whether the district court had jurisdiction to permit the condominium owners to bring this case as a class action.[4]

## II.

The district court allowed the plaintiffs to bring this class action without requiring that the named plaintiffs other than the Hoffmans and the members of the class exhaust the administrative remedies provided by the General Assembly. The general rule is that a court lacks jurisdiction to grant relief if a plaintiff has not exhausted his administrative remedies. *Gramiger v. Crowley,* 660 P.2d 1279 (Colo. 1983); *Moschetti v. Liquor Licensing Authority of City of Boulder,* 176 Colo. 281, 490 P.2d 299 (1971). This is especially true in tax relief cases. In *City and County of Denver v. Lewin,* 106 Colo. 331, 105 P.2d 854 (1940), this court acknowledged that the taxing power of the state is exclusively a legislative function.

> [T]he legislature has plenary power on the matter of taxation, and it alone has the right and discretion to determine all questions of time, method, nature, purpose, and extent in respect of the imposition of taxes, the subjects on which the power may be exercised, and all the incidents pertaining to the proceedings from beginning to end; and the exercise of such discretion, within constitutional limitations, is not subject to judicial control.

105 P.2d at 858. Where the General Assembly has established complete, adequate, and speedy statutory remedies for alleged tax irregularities, a taxpayer must exhaust them. *City and County of Denver v. Athmar Park Building Co.,* 151 Colo. 424, 378 P.2d 638 (1963); *Liebhardt v. Department of Revenue,* 123 Colo. 369, 229 P.2d 655 (1951); *Davison v. Board of County Com-*

---

**2.** The other individuals named, all owners of recently converted condominiums, did not seek individual administrative relief from the increased valuation of their condominiums.

**3.** The district judge who certified the class is not the judge who entered judgment, relying on the earlier certification.

**4.** Other issues were raised by the parties to this appeal, but our holding that the district court was without jurisdiction makes it unnecessary for us to address those issues.

*missioners,* 41 Colo.App. 344, 585 P.2d 315 (1978).

■ The important question, therefore, is whether the remedy provided by the General Assembly in this situation is complete, adequate, and speedy. We conclude that it is. If any taxpayer believes that his property has been valued incorrectly, he must timely protest the valuation to the county assessor. Section 39–5–122(2), 16B C.R.S. (1982).[5] If his protest is denied, he may appeal to the county board of equalization. Section 39–5–122(3), 16B C.R.S. (1982).[6] The petition for appeal to the county board of equalization must include a description of the property claimed to be erroneously valued, the valuation placed upon it by the assessor, and the valuation for assessment placed upon it by the person whose protest has been denied. Section 39–8–106(1), 16B C.R.S. (1982).[7] If this petition is denied, the taxpayer may appeal to the board of assessment appeals. Section 39–8–108(1), 16B C.R.S. (1982).[8] If the decision of the board is against the taxpay-er, he may petition the district court for judicial review. Section 39–8–108(2), 16B C.R.S. (1983 Supp.).[9]

■ The conclusion that this remedy is complete, adequate, and speedy may be demonstrated by examining the facts of this case. The Hoffmans protested the valuation of their condominium to the county assessor in June 1980, and were granted the individual relief they sought on November 13, 1980. The only relief not granted was that requested for the similarly situated condominium owners. The procedure described in sections 39–5–122, 39–8–106, and 39–8–108 indicates that the General Assembly did not intend this to be a class remedy. The county board of equalization is required to examine the description of the particular property assessed, the assessor's valuation, and the taxpayer's valuation. This procedure contemplates an individualized treatment of claims rather than an examination of a general protest of all

5. Section 39–5–122(2) provides in pertinent part: "If any person is of the opinion that his property has been valued too high, or has been twice valued, or is exempt by law from taxation, or that he did not own taxable property on the assessment date, or that property has been erroneously assessed to him, he may appear before the assessor on the days specified in the public notice to present his objection and protest and be heard...."

6. Section 39–5–122(3) provides: "Any person whose objection and protest has been denied in writing by the assessor may appeal to the county board of equalization in the manner provided in article 8 of this title."

7. Section 39–8–106(1) provides in pertinent part: "The board shall receive and hear petitions from all persons whose objections or protests have been refused or denied by the assessor. Such petitions shall be in a form, approved by the property tax administrator pursuant to section 39–2–109(1)(d), the contents of which shall include the following:
(a) ...
(b) A requirement that the assessor's office set forth the following information on the face of the form:
    (I) A description of the property claimed to be excessively, erroneously, or illegally valued;
    (II) The valuation for assessment placed upon it by the assessor;

    (III) A specific and detailed statement of the grounds delineated in this subparagraph (III), upon which the assessor relied to justify his valuation ....
    (IV) The assessor's written statement refusing to change such valuation; and
    (V) The valuation for assessment placed upon it by the person whose objection and protest has been denied.
(c) Space for the person whose objection and protest has been denied to state the grounds on which he relied and to indicate the manner, if any, in which he disagrees with the assessor's statement of the information described in paragraph (b) of this subsection (1)."

8. Section 39–8–108(1) provides:
"If the county board of equalization grants a petition, in whole or in part, the assessor shall adjust the valuation for assessment accordingly, but if the petition is denied, in whole or in part, the petitioner may appeal to the board of assessment appeals. Such appeal shall be taken no later than thirty days after such denial."

9. Section 39–8–108(2) provides in pertinent part:
"If the decision of the board is against the petitioner, he may, within thirty days after such decision, petition the district court of the county wherein his property is located for judicial review thereof pursuant to section 24–4–106, C.R. S."

similarly situated owners.[10]  The denial by the General Assembly of this procedure as a class remedy is within its discretion, especially in light of the fact that the General Assembly has provided other ways for a taxpayer to protest the valuation of classes or subclasses of property.  At the time this action was initiated a taxpayer could file a complaint with the state property tax administrator alleging that a class or subclass of property had been erroneously valued, section 39–2–111, 16B C.R.S. (1982),[11] or he could appeal a decision of the board of assessment appeals with regard to valuation of classes or subclasses of property to the state board of equalization.  Section 39–9–103(2), 16B C.R.S. (1982).[12]  The plaintiffs here pursued neither of these remedies.

■  We conclude that the district court had no jurisdiction in this case.  All plaintiffs, except the Hoffmans, failed to exhaust the complete, adequate, and speedy remedy provided by the General Assembly to protest property valuations.  The Hoffmans could not bring this action to the district court on their own because the decision of the BAA was not against them.  *See* section 39–8–108(2), 16B C.R.S. (1982) set out in fn. 9, *supra.*[13]

The plaintiffs argue that *Rodgers v. Atencio,* 43 Colo.App. 268, 608 P.2d 813

(1979) supports allowing a class action in this case.  In *Rodgers,* the Court of Appeals held that the certification of a class of disabled individuals to challenge the termination of disability benefits was correct.  The defendant Department of Social Services contended that some class members had not timely pursued administrative remedies, but the court held that it was unnecessary for the class members to pursue those remedies because the agency did not have the authority to rule on the substantive issue presented.  That is not the case here; the relief sought by the Hoffmans could be obtained under the administrative remedy provided.

The plaintiffs also argue, citing *Rose v. City of Hayward,* 126 Cal.App.3d 926, 179 Cal.Rptr. 287 (1981), that due process of law requires that if a class procedure is not provided by administrative rule, exhaustion of administrative remedies is unnecessary.  We need not address the constitutional issue raised because, as already noted, the General Assembly has provided for protests and appeals of valuations of classes or subclasses of property under sections 39–2–111 and 39–9–103(2).

We, therefore, reverse the judgment of the district court and remand the case with directions to dismiss the complaint for lack of jurisdiction.

10.  The Hoffmans assert that they exhausted the administrative remedies for all members of the class by including those "similarly situated" on their petitions for relief, but it is obvious that the only valuation contested in the various administrative proceedings was the Hoffmans'.  We note that the district court expressly ruled that the BAA did not err in dismissing that portion of the appeal made on behalf of all similarly situated owners.

11.  Section 39–2–111 provided in pertinent part:
"The administrator shall examine all complaints filed with him wherein it is alleged that a class or subclass of taxable property in a county has not been appraised or valued as required by law or has been improperly or erroneously valued or that the property tax laws have in any manner been evaded or violated.  Complaints shall be in writing and may be filed only by a taxing authority in a county or by any taxpayer."

12.  Section 39–9–103(2) provided in pertinent part:
"The decisions of the board of assessment appeals may be reversed or modified by the state board of equalization only with regard to valuation of classes or subclasses of property, and such action shall be taken only if a written appeal has been lodged with the state board of equalization by one of the parties to the proceedings before the board of assessment appeals."
The provision allowing appeals of BAA decisions affecting classes or subclasses of property is currently in section 39–9–103(5), 16B C.R.S. (1983 Supp.).

13.  The district court granted this class action as an equitable remedy.  A well-established doctrine in Colorado is that equity will not act if there is a plain, speedy, and adequate remedy at law.  *People ex rel. Winbourn v. District Court,* 87 Colo. 316, 287 P. 849 (1930).