**CITY AND COUNTY OF DENVER, a home rule city and a Colorado municipal corporation; and CHERYL D. COHEN, Manager of Revenue, City and County of Denver, Petitioners/Cross–Respondents,**

v.

**UNITED AIR LINES, INC., a Delaware corporation authorized to transact business in the State of Colorado, Respondent/Cross–Petitioner.**

**No. 98SC431.**

Supreme Court of Colorado, En Banc.

Sept. 11, 2000.

---

J. Wallace Wortham, City Attorney, City and County of Denver Maria Kayser, Assistant City Attorney Robert F. Strenski, Assistant City Attorney Denver, Colorado Attorneys for Petitioners/Cross-Respondents

Brownstein Hyatt & Farber, P.C. Hubert A. Farbes, Jr. Lynne M. Hufnagel Denver, Colorado Attorneys for Respondent/Cross-Petitioner

Justice BENDER delivered the Opinion of the Court.

## I. INTRODUCTION

In this appeal, we address the district court's jurisdiction to hear a taxpayer's challenge to certain use and sales tax assessments levied by Denver's Manager of Revenue. Because we conclude that the district court did not have jurisdiction, we do not reach the other issues raise by the parties.

Petitioners, the City and County of Denver and its Manager of Revenue (collectively, Denver) assessed respondent, United Air Lines, Inc., certain sales and use taxes under the Denver Revised Municipal Code (D.R.M.C. or Code). United brought suit in the district court, City and County of Denver, seeking a refund of the taxes. Denver filed a motion to dismiss, arguing that the district court lacked jurisdiction over the case because United failed to exhaust its administrative remedies. The district court denied Denver's motion and granted United's motion for summary judgment, ruling that there were no genuine issues of fact concerning the amount of the refund Denver owed United.

On appeal, the court of appeals affirmed in part, reasoning that Denver was not entitled to dismissal because United followed the proper review procedures. However, the court of appeals reversed the summary judgment in favor of United, holding that there were material issues of fact regarding United's entitlement to a refund. *See United Air Lines, Inc. v. City & County of Denver*, 975 P.2d 1139, 1143–44 (Colo.App.1998). Both parties petitioned this court for certiorari.

We hold that when an agency directs a party to follow certain administrative procedures consistent with the agency's governing statutes or ordinances, the party must exhaust those procedures or demonstrate that an exception from the exhaustion requirement excuses their failure to do so before the party may seek judicial review of the

agency's decision. Because United failed to pursue the administrative procedures that Denver instructed it to follow which were provided for in the D.R.M.C., United did not exhaust its available administrative remedies. As a result, the district court lacked jurisdiction to hear the case. Thus, we reverse the court of appeals and remand the case to that court for return to the trial court with instructions to grant Denver's motion to dismiss.

## II. FACTS AND PROCEEDINGS BELOW

In large part, we rely on the court of appeals' description of the facts of this case. *See United,* 975 P.2d at 1140–41. At all times relevant to this proceeding, United conducted air carrier operations at Denver's Stapleton International Airport. Based on its operations at the airport, United was subject to sales, use, and occupational privilege taxes under the Denver Code.

In 1995, Denver's Manager of Revenue conducted an audit of United's records for the period January 1, 1991 through June 30, 1994.[1] Although United had filed timely returns during this period, the Manager determined that United failed to pay use taxes on a substantial amount of property that was subject to Denver's use tax. The Manager also discovered relatively minor discrepancies in United's sales and occupational privilege tax returns.

On December 8, 1995, the Manager mailed United three separate documents, each titled "NOTICE OF FINAL DETERMINATION, ASSESSMENT AND DEMAND FOR PAYMENT" and signed by the Manager ("assessment letters"). The assessment letters addressed United's payments of Denver's use tax, sales tax, and occupational privilege tax, respectively, stating that United underpaid each of the taxes in question. The letters informed United that the Manager assessed the airline additional taxes based on its underpayments, and the letters stated that United was liable for payment of the assessments, plus penalties and interest. The assessments totaled $3,368,459.64 for all three taxes.[2] The assessment letters stated that the amounts due were payable twenty days from the date the Manager mailed the letters and that unless United petitioned the Manager for review of the assessments within this twenty-day period, the assessments would become final:

> PLEASE TAKE NOTICE: The amounts below are assessed against you. This assessment shall be final and due and payable 20 days from the date of mailing of this notice by certified mail, or if served personally, then 20 days from such service, UNLESS WITHIN SAID 20 DAY PERIOD YOU PETITION the Manager of Revenue for review and modification of the assessment.... Upon your failure to pay such taxes when due, the City and County of Denver will proceed to collect the taxes assessed in accordance with the provisions of Art. [II/III] of Chapter 53 of the Revised Municipal Code.

(Emphasis in original.)

Although the assessment letters cited no specific Code section, their descriptions of administrative protest procedures are identical to sections 53–49(c) and 53–117(c) of the Code.[3] These sections provide that taxpayers may petition the Manager for review, modification, or cancellation of assessments within twenty days of the mailing of the assessment letters.[4]

---

1. Code sections 53–48 and 53–116 authorize the Manager to conduct audits of taxpayer records.

2. The sales tax assessment included $41,000.00 in tax, $4,100.00 in penalty, and $17,945.00 in interest for a total of $63,045.00. The use tax assessment included $2,321,206.85 in tax, $235,142.69 in penalty, and $706,412.06 in interest for a total of $3,262,761.60. The occupational privilege tax assessment included $28,819.62 in tax, $2,881.96 in penalty, and $10,951.46 in interest for a total of $42,653.04. United did not contest the occupational privilege tax assessment and that assessment is not at issue in this case.

3. Sections 53–49(c) and 53–117(c) provide for an "assessment" of delinquent taxes, "due and payable from the taxpayer to the city twenty (20) days" from "the date of the mailing of the notice and demand."

4. Under sections 53–49 and 53–117, a taxpayer who wants to petition for review of a tax assessment has two options. The taxpayer may pay the taxes and petition for review, which tolls the

United received the assessment letters on December 12, 1995, but took no action within the stated twenty-day period from when the Manager had mailed the letters, which ended December 28. Sometime early the next month, Denver informed United that interest was accruing on the delinquent taxes and that it would commence collection procedures, including the seizure of United's property. On January 19, 1996, United paid the assessments in full, claiming that it made the payment "under protest."

On February 7, 1996—61 days after Denver mailed the assessment letters and 57 days after United received them—United submitted a "CLAIM FOR REFUND" for $1,084,516.00, slightly less than one-third of the amounts assessed.[5] In an attachment to the claim, United listed a variety of reasons why it claimed portions of the assessed amounts were exempt from tax. The Manager denied the refund request two days later. The Manager explained that the assessments were final because United failed to petition for review of the assessments within the Code's twenty-day deadline, as the assessment letters instructed.

After the Manager denied United's request for a refund, United protested the denial and requested a hearing. The Manager responded that "there is no provision in the Denver Revised Municipal Code to allow for a hearing as requested" because United had not filed its protest in a timely fashion. The Manager denied United's request for a hearing.

United then filed this action in the district court. In two claims under C.R.C.P. 106(a)(4),[6] United claimed that the Manager abused his discretion by denying United's request for a refund, by denying United a hearing after it protested the Manager's denial of the refund request, and by failing to consider the substantive bases for United's refund claim.[7]

In addition to these claims, United also sought a declaratory judgment, asserting that "[a]pplicable Denver Municipal Code ordinances unequivocally entitle United to request and claim a refund for sales or use taxes paid so long as the claim or request is submitted within sixty (60) days of the initial notice or demand for payment of taxes." United asked the court to "[d]eclare that United's Protest of Denial of Claim for Re-

---

accrual of any interest and penalties during the petition process. *See* §§ 53–49(d), 53–117(d). Alternatively, the taxpayer may petition for review without paying the assessed taxes, in which case interest continues to accrue. *See* §§ 53–49(c), 53–117(c). In order to petition an assessment, the taxpayer must notify the Manager that he is petitioning for review of an assessment and provide the Manager "a summary written statement of the facts and reasons for and the amount of the requested changes in the assessment." §§ 53–49, 53–117. If the taxpayer files a petition, the Manager must conduct a hearing and enter a final decision composed of findings and an order. *See* §§ 53–50, 53–118. The taxpayer may seek review of the final decision in the district court under C.R.C.P. 106(a)(4). *See* §§ 53–56, 53–124.

5. Sections 53–45 and 53–113 state that taxpayers may submit claims for refunds of use or sales taxes if, pursuant to the Manager's "examination" of a return, the Manager determines that the taxpayer overpaid its taxes. Claims for refunds under these provisions are governed by procedures in sections 53–43 and 53–111 which provide the refund applications "must be made within sixty (60) days after the purchase of the goods or the performance of the services on which the exemption is claimed."

6. C.R.C.P. 106(a)(4) allows a party to seek relief in a district court "[w]here any governmental body or officer ... has exceeded its jurisdiction or abused its discretion, based on the evidence in the record before the defendant body or officer." *See, e.g., City & County of Denver v. Fey Concert Co.,* 960 P.2d 657, 660 (Colo.1998). When a party brings a C.R.C.P. 106(a)(4) action relief is limited to "a determination of whether the body or officer has exceeded its jurisdiction or abused its discretion." C.R.C.P. 106(a)(4)(I).

7. One of United's claims under C.R.C.P. 106(a)(4) states, "The City and the Manager abused their discretion, and have effectively denied United its right to due process under law...." Although this claim mentioned due process, United never specified the nature of the due process violation alleged (whether procedural, substantive or notice-related) and never raised a due process argument in its briefs or in oral arguments at any stage of this proceeding. Thus, any due process claim is not before this court. In addition, another of United's claims under C.R.C.P. 106(a)(4) referenced an alleged violation of the Commerce Clause of the United States Constitution. This claim was never argued and, likewise, is not before this court.

fund was timely submitted" and to "[d]eclare that United is entitled to receive a tax refund in the amount of $1,084,516.00." The airline also asked the court, in the alternative, to order the Manager to conduct a hearing on United's refund claims.

In response to United's claims, Denver filed a motion to dismiss, arguing that the court lacked jurisdiction to hear the case because United failed to exhaust its administrative remedies. Denver contended that United's "claim for refund" occurred after the twenty-day deadline provided in the assessment letters and in sections 53–49 and 53–117. Denver asserted that because United failed to follow the procedures set forth in the assessment letters and in the Code, the district court lacked jurisdiction to hear United's claims.

United argued that because it followed the appropriate procedures at the administrative level, the district court could exercise jurisdiction over its claims. According to United's interpretation of the Code, United could claim a refund of taxes paid in error pursuant to sections 53–45 and 53–113. United argued that because it was seeking a refund under these provisions, it was not bound by the twenty-day deadline established in Denver's assessment letters.

Upon cross-motions for summary judgment by both parties, the district court ruled in favor of United. The district court found that United paid the tax assessment, although "involuntarily." The court determined that after paying the tax assessment, United "complied with the administrative processes prescribed by the Code for refund of use taxes by filing its refund request in a timely manner consistent with the Code's provisions." Thus, United was entitled to a refund of "all taxes wrongfully or illegally paid" to Denver.

Having determined that United followed the proper procedures for requesting a refund of sales and use tax, the court turned to the issue of the amount of the refund to which United was entitled. Because United presented sufficient evidence to support the amount of its refund entitlement, Denver had the burden of establishing facts showing a genuine issue of fact concerning the amount of refund owed. Based on the evidence Denver presented, the court concluded that Denver "failed to demonstrate . . . any evidence of material dispute regarding the amount of the refund entitlement." Thus, the court issued summary judgment in United's favor for $1,084,516.00—the full amount of United's refund request—and Denver appealed.

The court of appeals first addressed Denver's argument that the district court lacked jurisdiction because United failed to exhaust its administrative remedies and concluded that the district court properly exercised jurisdiction in this case. See *United*, 975 P.2d at 1141–43. The court of appeals concluded that because the assessment letters specified that the Manager's demand for additional taxes was based upon the Code's audit provisions, the demand was an "examination" of United's "timely filed return" pursuant to sections 53–45(c) and 53–113(c), *not* an assessment of additional taxes under sections 53–49 and 53–117. See *id.* at 1142–43. Because Denver's demand for payment was not an assessment, the court held that the twenty-day protest provisions of sections 53–49 and 53–117 were inapplicable. Instead, the court of appeals held that the sixty-day deadline for requesting a refund governed and concluded that United "effectively complied with the code's refund procedures and exhausted its administrative remedies when doing so." *Id.* at 1143. Thus, the court held that the district court properly exercised jurisdiction over the matter.

Although the court of appeals concluded that the district court possessed jurisdiction over United's claims, the court of appeals reversed the district court's summary judgment for United on the amount of the refund owed to the airline. See *id.* The court held that "our review of the record indicates the presence of material issues of fact as to the Manager's assessment after audit, the amount of additional sales and use taxes assessed, United's entitlement to a refund based on exemptions provided for in the code, and the amount of that refund, if any." *Id.* at 1144. Thus, the court remanded the case to the trial court "with directions to order the Manager to conduct a hearing to

determine the merits of United's refund claim." *Id.*

We granted Denver's petition for writ of certiorari to consider whether the court of appeals erred by holding that the district court had subject-matter jurisdiction to hear United's claims.[8] We also agreed to consider whether the court of appeals applied the proper administrative review procedures under the Denver Code.[9] We granted certiorari on United's cross-petition to determine whether the court of appeals erred in holding that issues of material fact precluded granting United's motion for summary judgment.[10]

## III. DISCUSSION

The first question Denver presents for our review requires us to determine whether the district court properly exercised jurisdiction over United's claims even though United failed to follow the procedures set forth in the assessment letters and in the Code. We begin by reviewing the general jurisdictional requirement that a party exhaust available administrative remedies before seeking relief in a district court. We conclude that the district court lacked jurisdiction over United's claims because the airline failed to follow the administrative procedures set forth both in the assessment letters and in the Code without an exception excusing United's failure. Our precedent does not permit United to circumvent the exhaustion requirement by seeking declaratory judgment without first having followed the required procedures at the administrative level. Thus, we hold that the district court lacked jurisdiction to consider United's claims.

Since the district court lacked jurisdiction over United's claims, we do not reach the central question decided by the court of appeals: which administrative review procedure governed and whether the Code required United to seek review within twenty or sixty days.

### A. Exhaustion of Administrative Remedies

We begin by discussing the jurisdictional requirement that a plaintiff exhaust available administrative remedies before bringing suit to challenge administrative action, including sales or use tax assessments. If complete, adequate, and speedy administrative remedies are available, a party must pursue these remedies before filing suit in district court. *See State v. Golden's Concrete Co.*, 962 P.2d 919, 923 (Colo.1998); *Horrell v. Department of Admin.*, 861 P.2d 1194, 1197 (Colo.1993); *Hoffman v. Colorado State Bd. of Assessment Appeals*, 683 P.2d 783, 785 (Colo.1984). If a party fails to exhaust these remedies, the district court may lack subject-matter jurisdiction over the action. *See Golden's*, 962 P.2d at 923. The requirement that a complaining party exhaust its administrative remedies is particularly applicable in tax cases. *See Hoffman*, 683 P.2d at 785. Thus, only taxpayers who have sought timely review of assessments by the Manager may obtain judicial review. *See American Drug Store, Inc. v. City & County of Denver*, 831 P.2d 465, 469 (Colo.1992).

The exhaustion doctrine promotes several important and related policy interests. The exhaustion requirement allows agencies with expertise in a particular subject matter to develop the necessary factual record upon which the agency and subsequent reviewing courts may base their decisions. *See McKart v. United States*, 395 U.S. 185, 194, 89 S.Ct. 1657, 23 L.Ed.2d 194

---

**8.** Denver presented the following issue: Whether the court of appeals erred by finding that the District Court had jurisdiction over the subject matter when United failed to exhaust its administrative remedies.

**9.** In this regard, Denver presented the following issues:
1) whether the court of appeals erred by finding that United was not required to exhaust its administrative remedies within twenty days as provided in §§ 53–49 and 53–117, D.R.M.C., and 2) whether the court of appeals erred by finding that even though United failed to protest the

assessment within twenty days, United could file a request for refund under §§ 53–43 and 53–111.

**10.** The issue presented was: whether the court of appeals erred in finding "the presence of material issues of fact as to ... United's entitlement to a refund based on exemptions provided for in the [Denver Revised Municipal] code, and the amount of that refund, if any," when the only admissible evidence before the trial court was United's evidence supporting entitlement to a refund of $1,084,516.

(1969); *Golden's*, 962 P.2d at 923. The doctrine promotes efficiency in the administrative context by preventing the interruption and fragmentation of the administrative process. *See McKart*, 395 U.S. at 194–95, 89 S.Ct. 1657; *Horrell*, 861 P.2d at 1197. Allowing the agency the opportunity to correct its own errors in the first instance preserves the autonomy of the agency. *See McKart*, 395 U.S. at 195, 89 S.Ct. 1657; *Golden's*, 962 P.2d at 923. In addition to promoting the efficiency and integrity of the administrative forum, the requirement of exhaustion conserves judicial resources by insuring that courts intervene only if the administrative process fails to provide adequate remedies. *See Horrell*, 861 P.2d at 1197. .

■■■ The exhaustion requirement is subject to limited exceptions. *See Golden's*, 962 P.2d at 923. Exhaustion is not necessary, for example, when it is "clear beyond a reasonable doubt that further administrative review by the agency would be futile because the agency will not provide the relief requested." *Id.* (citation omitted); *see also Kuhn v. Department of Revenue*, 817 P.2d 101, 104 (Colo.1991). Exhaustion is also unnecessary, for instance, when the matters in controversy are matters of law that the agency lacks the authority or capacity to determine, such as constitutional issues. *See Golden's*, 962 P.2d at 923; *Horrell*, 861 P.2d at 1197–98; *Fred Schmid Appliance & Television Co. v. City & County of Denver*, 811 P.2d 31, 33 (Colo.1991).[11]

■■■ The exceptions to the exhaustion doctrine apply to situations in which the policies underlying the doctrine would not be served by requiring the protesting party to pursue available administrative remedies. A party challenging the constitutionality of an agency's governing statute or ordinance, for example, does not have to exhaust administrative remedies because the agency lacks the necessary expertise to address the constitutionality of statutes and other issues of law that fall squarely in the province of the courts. *See Fred Schmid*, 811 P.2d at 33; 3 Koch, supra n. 11, § 13.22. If the agency refuses to reconsider its decisions or procedures, or has stated a categorical rule to apply in a group a cases, rendering exhaustion futile, requiring the protesting party to pursue administrative remedies would not further such interests as allowing the agency to correct its own errors and to develop a record for judicial review. *See, e.g., Kuhn*, 817 P.2d at 104. In these and other instances in which an exception applies, courts will excuse a party's failure to exhaust available administrative remedies because those situations do not implicate the interests underlying the exhaustion requirement. *See* 3 Koch, supra, § 13.22; Gelpe, *supra*, at 31.

■■■ The requirement that a party exhaust administrative remedies applies with equal force when the party seeks declaratory relief. When the General Assembly adopted the Uniform Declaratory Judgments Law (§§ 13–51–101 to 115, 5 C.R.S. (1999)), it created a new remedy but neither expanded nor contracted the jurisdiction of the courts. *See Romer v. Fountain Sanitation Dist.*, 898 P.2d 37, 40 (Colo.1995). For this reason, jurisdictional requirements such as exhaustion apply to actions for declaratory relief like any other action in a district court. *See, e.g., Palmer v. Perkins*, 119 Colo. 533, 536–38, 205 P.2d 785, 786–87 (1949).[12]

---

11. Other recognized exceptions to the exhaustion requirement include: statutory exceptions to exhaustion; instances in which the agency acted outside the scope of its authority; waiver of the exhaustion requirement by the agency; challenges based on bias or prejudgment; inadequate administrative remedies; or instances in which exhaustion would cause a party irreparable injury. *See* 3 Charles H. Koch, *Administrative Law and Practice*, § 13.22 (2d ed.1997); Marcia R. Gelpe, *Exhaustion of Administrative Remedies: Lessons from Environmental Cases*, 53 Geo. Wash. L.Rev. 1, 32 (1984).

12. In *Palmer*, the State assessed the plaintiffs' use taxes based on their purchase of a business, and the State provided the plaintiffs notice that the assessment would be "final and due and payable [within ten days]" unless the plaintiffs petitioned for review and modification of the assessment. 119 Colo. at 534–35, 205 P.2d at 785–86. The plaintiffs neither paid the tax assessment nor petitioned for review or an extension of time within the ten-day deadline. *See id.* at 535, 205 P.2d at 786 Several weeks later, the plaintiffs sought a declaratory judgment against the State in the district court. We affirmed the district court's dismissal of the case because the plaintiffs failed to exhaust the administrative

## B. Application

Having discussed the basic principles of the exhaustion doctrine, we turn to the facts in this case and address Denver's assertion that the trial court lacked jurisdiction because United failed to exhaust its administrative remedies. The issue is whether United was required to exhaust the administrative remedies that Denver instructed it to follow despite believing that separate procedures applied to its case. For the reasons we discuss below, we hold that when an agency directs a party to follow certain administrative procedures consistent with the agency's governing statute or ordinance, the party may seek judicial review of the agency's actions only if the party exhausts those procedures or if the party establishes that an exception to the exhaustion requirement excuses its failure to do so.

Like the plaintiffs in *Palmer*, United received notice of the procedures the Code required for protesting the use and sales taxes that the Manager assessed. Denver's assessment letters expressly informed United that it had twenty days in which to petition the Manager for a review and modification of the assessment. This deadline follows precisely the requirements of 53–49(c) and 53–117(c) of the Code.[13] Thus, United had ample instruction about the procedures for challenging the Manager's assessments. United did not comply with this requirement, just as the plaintiffs in *Palmer* failed to petition for a review of their assessment within the time specified by the taxing authority. *See id.* at 537, 205 P.2d at 787. Because United failed to comply with the required administrative procedures set forth in the Code and reiterated in the assessment letters, it failed to exhaust available administrative remedies.

Requiring United to follow the procedures provided for in Denver's assessment letters and in the Code furthers the basic policies that support the exhaustion doctrine. If United had filed a timely petition and had argued to Denver that it should have had sixty days in which to file for a refund, then Denver could have considered the specific facts of United's case, utilized its expertise construing the D.R.M.C., and reconsidered its interpretation of the Code, potentially correcting any errors in its position. Furthermore, if United had filed for a review of the assessments within twenty days, then the Manager would have addressed United's substantive concerns about the amount of the assessments, developing the record for further administrative and judicial review. Additionally, if United had petitioned within twenty days of receiving the assessment letters, then Denver would have reached the merits of United's claims and the controversy might have been settled at the administrative level, preserving the agency's autonomy and conserving judicial resources. Thus, requiring United to comply with the procedures set forth in the assessment letters and in the Code—even though United disputed the applicability of those procedures to its situation—would have furthered the policies that favor the exhaustion doctrine.

In addition to furthering the fundamental principles underlying the exhaustion doctrine, United failed to demonstrate that any exceptions to the doctrine excused its failure to pursue the administrative procedures outlined by Denver and provided for by the Code. For instance, had United challenged the constitutionality of the petition procedures Denver required it to follow, then United would not have been expected to exhaust those procedures. In *Fred Schmid*, we held that the district court had jurisdiction to determine the constitutionality of certain provisions of the D.R.M.C. even though the plaintiff failed to exhaust available administrative remedies. *See* 811 P.2d at 33. Because the plaintiff sought review of the constitutionality of the Code and not review of the agency's decision, the party seeking declaratory relief did not have to exhaust available administrative remedies. *See id.* By contrast, United did not pursue any constitutional or purely legal challenges that would have been beyond the scope of the proceedings available at the administrative level.

remedies of which they were given notice. *See id.* at 537–38, 205 P.2d at 787.

**13.** *See* procedures outlined *supra* note 4.

Thus, this exception to the exhaustion doctrine is unavailable to the airline.

Just as United did not challenge the constitutionality of either the Code provisions that Denver expected it to comply with or the constitutionality of the agency's conduct, United did not assert that any other exceptions to the exhaustion requirement excused its failure to pursue the procedures set forth in the assessment letters and in the Code. United failed to argue, for example, that the procedures available to it could not have provided adequate relief. That is, United's actual interest was convincing the Manager that United should have paid only two million dollars in additional taxes, which United could have argued had it petitioned for review of the assessments within twenty days. Hence, no exceptions excused United's failure to pursue the administrative remedies set forth by the assessment letters and the Code.

Although we will not require a party to exhaust available administrative remedies when the party can establish that an exception to the doctrine excuses its failure to exhaust, we will not recognize a new exception from the exhaustion doctrine when a party challenges the agency's directions to follow certain procedures established by the agency's governing statutes or ordinances. When an agency directs a party to follow certain review procedures consistent with the agency's governing statutes or ordinances, a party may not circumvent those procedures simply by arguing that a separate set of procedures applies under the relevant statute or code. Were we to allow plaintiffs to avoid administrative procedures in such circumstances, especially if we allowed courts to reach the merits of a case based on a purely procedural dispute, we would "produce the very [judicial] interference with the administrative process that the exhaustion doctrine is designed to prevent." *Fred Schmid*, 811 P.2d at 35 (Quinn, J., dissenting).

A party in a position similar to that of United is not left without recourse if it be-lieves an agency is requiring it to comply with inapplicable procedures. One option available to the party is to comply with the procedures set forth by the agency and attempt to convince the agency that its interpretation is erroneous. Under this scenario, the party may present its procedural arguments to the district court after establishing that it followed administrative remedies as directed by the agency. Additionally, by exhausting the procedures set forth by the agency and its governing statutes or ordinances, the party may still bring substantive challenges to the agency's actions even if the party loses its objection to the agency's procedures. Under the facts of this case, had United complied with Denver's twenty-day deadline and been unable to convince either Denver or the courts that the sixty-day refund provisions applied, United could still have presented its substantive challenges to the assessments for administrative and judicial review.

In addition to the option of complying with the agency's procedures and challenging their applicability through the process of administrative and judicial review, a party may establish that an exception to the exhaustion doctrine excuses its refusal to comply with the procedures established by the agency. For example, the party could challenge the constitutionality of the legislation upon which the agency relied for its actions or challenge the adequacy of the procedures provided by the agency. *See, e.g., Horrell*, 861 P.2d at 1197 (excusing a party's failure to exhaust because the party was challenging the constitutionality of an agency's governing legislation); *City & County of Denver v. Eggert*, 647 P.2d 216, 224–25 (Colo.1982) (holding that procedures followed by agency denied plaintiffs due process).[14] Hence, a party who believes that an agency has erroneously directed it to follow inapplicable procedures found in the agency's governing statutes or ordinances has at least two options for seeking administrative and judicial review of the agency's instructions.

---

**14.** *See also Coit Independence Joint Venture v. Federal Sav. & Loan Corp.*, 489 U.S. 561, 587, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989) (holding that where procedures followed by agency placed unreasonable time limits on plaintiffs, plaintiffs could proceed directly to district court without exhausting administrative remedies); *Department of Health v. Donahue*, 690 P.2d 243, 249 (Colo. 1984) (holding that when agency creates procedures for review, due process of law requires the agency to adhere to those procedures even if they exceed what is constitutionally required).

■ We note that United may not circumvent the exhaustion doctrine by seeking declaratory relief. As discussed, the General Assembly did not expand the jurisdiction of the courts when it adopted the Uniform Declaratory Judgments Law. Thus, prerequisites to jurisdiction such as exhaustion apply when a party seeks declaratory relief from agency action. *See Palmer.* In *American Drug Store,* we acknowledged that when "a party wishes to challenge *the constitutionality* of a statute or ordinance that the agency enforces, that party may bring an action for declaratory judgment in district court." 831 P.2d at 469 (emphasis in original). In this case, United did not seek a declaratory judgment that the Code provisions being enforced by Denver were unconstitutional or that the Manager had otherwise acted unconstitutionally. Instead, United sought declarations that separate procedures applied in its case, and that Denver owed the airline a refund of more than one million dollars, which are both issues that could have been addressed through appropriate administrative procedures. The fact that United sought declaratory relief does not excuse it from the requirement of exhaustion.

Having held that the district court lacked jurisdiction, we do not reach the remaining questions on certiorari which include whether the court of appeals correctly interpreted the Code by holding that the refund procedure (allowing sixty days to apply for a refund) rather than the assessment procedure (allowing twenty days to petition for review) applied to this case. For the same reason, whether the court of appeals erred in holding that there was a genuine issue of material fact precluding summary judgment is, as United acknowledges, moot.

## IV. CONCLUSION

For the reasons stated, we reverse the decision of the court of appeals and remand this case to that court for return to the district court with instructions that the district court dismiss United's claims.

Justice HOBBS, specially concurring:

I concur in the opinion and judgment of the court upholding the dismissal of United's claims, but I write separately to explain why I agree with Denver's contention and disagree with United's contention that it exhausted its administrative remedies. Denver contends that D.R.M.C. sections 53–49(c) and 53–117(c) required United to petition for administrative review of its tax assessment within twenty days of service thereof. United contends that the sixty-day provisions of D.R.M.C. sections 53–43(b) and 53–111(b) concerning tax refunds applied. If United's contention is correct, it exhausted its administrative remedies. The District Court agreed with United.

I agree with the majority that failure to exhaust administrative remedies can bar judicial review when the party seeking to set the agency's decision aside has failed "to follow certain review procedures consistent with the agency's governing statutes or ordinances." Maj. op. at 1215. However, I am concerned about the opinion's focus on the Manager of Revenue's notice to United that it had twenty days upon service of the assessment to pay or petition for administrative review. *See* maj. op. at 1209. If United is correct that the Code allowed it sixty days to invoke administrative review, then the Manager's notice did not correctly reflect the ordinance.

In the event of an inconsistency between the Code's provisions and the Manager's notice, the Code provisions would control. Courts look to statutes and implementing regulations to determine whether adequate remedies exist; administrative remedies that are inadequate need not be exhausted. *See Coit Indep. Joint Venture v. Federal Sav. & Loan,* 489 U.S. 561, 587–88, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989). Our agency judicial review cases, including those pertaining to tax assessment appeals, ordinarily set forth the applicable statutory or regulatory provisions that governed the underlying administrative process and resolve conflicting positions of the parties regarding their construction or applicability. *See, e.g., Winslow Constr. Co. v. Denver,* 960 P.2d 685, 688–89 (Colo.1998); *Gilpin County Bd. of Equalization v. Russell,* 941 P.2d 257, 261–64 (Colo.1997).

At one point, the majority characterizes the exhaustion doctrine as a "jurisdictional requirement." Maj. op. at 1212. While I agree that certain procedural requirements are jurisdictional, such as those which specify

the time for filing a judicial review action, *see, e.g., Danielson v. Zoning Bd. of Adjustment of the City of Commerce City,* 807 P.2d 541, 543 (Colo.1990), the exhaustion requirement is not necessarily jurisdictional in nature. *See Cutler v. Hayes,* 818 F.2d 879, 890 (D.C.Cir.1987); *see also Patel v. Thomas,* 793 P.2d 632, 636 (Colo.App.1990). Rather, as the majority discusses, *see* maj. op. at 1212–1213, it serves a number of purposes and has a number of exceptions. Thus, it should be applied with a view towards those purposes, which include: (1) discouraging the flouting of the administrative process; (2) allowing the agency the first opportunity to apply its expertise, exercise its discretion, and correct its errors; (3) aiding judicial review by promoting the development of facts during the administrative proceeding; and (4) promoting judicial economy by reducing duplication and perhaps obviating judicial involvement. *See Cutler,* 818 F.2d at 890–91; *Colorado v. Golden's Concrete Co.,* 962 P.2d 919, 923 (Colo.1998).

Accordingly, I turn to Denver's and United's competing contentions regarding the Code and the efficacy of the Manager's notice of twenty days for United to petition for administrative review.

United argues that this case should be analyzed under D.R.M.C. sections 53–45 and 53–113, entitled "Examination of returns; refunds, credits and deficiencies." These sections provide in relevant part:

> As soon as practicable after the return required by this article is filed, the manager shall examine it for correctness. If it then appears that the correct amount of tax to be remitted is greater or less than that shown in the return, the tax shall be recomputed.

D.R.M.C. §§ 53–45(a), 53–113(a). If the Manager's audit shows taxpayer payments less than what it determines to be due, subsection (c) then provides that the difference, plus interest, "shall be paid over by the vendor within twenty (20) days after written notice and demand for payment from the manager." D.R.M.C. §§ 53–45(c), 53–113(c).

The court of appeals held that (1) the Code does not specify that the additional taxes become an assessment; (2) the Code does not specify a procedure for protesting the additional taxes pursuant to D.R.M.C. sec-

tions 53–49 and 53–117; and (3) the provisions contained in D.R.M.C. sections 53–45(d) and 53–113(d) apply even though the taxes were paid beyond the twenty day period. The court of appeals concluded that an application for refund can be made in accordance with the procedures found in D.R.M.C. sections 53–43 and 53–111. The Code's refund provisions state:

> Applications for refund must be made within sixty (60) days after the purchase of the goods or the performance of the services on which the exemption is claimed.

D.R.M.C. §§ 53–43(b), 53–111(b). United defends the court of appeals decision, arguing that it exhausted its administrative remedies because it filed a tax return, paid the taxes due, and applied for a refund within sixty days of when it received notice of the alleged deficiency.

I agree with Denver's contention, however, that D.R.M.C. sections 53–49 and 53–117 are applicable to this case, and disagree with the court of appeals holding that the examination of the returns sections, *see* D.R.M.C. §§ 53–45 and 53–113, and the refund sections, *see* D.R.M.C. §§ 53–43 and 53–111, are applicable. In construing a legislative action, we must give effect to the words chosen, and we must reconcile seemingly conflicting provisions whenever possible. *See Upper Black Squirrel Creek Ground Water Management Dist. v. Goss,* 993 P.2d 1177, 1186 (Colo.2000).

D.R.M.C. sections 53–49(a) and 53–117(a) clearly state that when "any retailer neglects or refuses to make a return in payment of the taxes as required by this article, the manager shall make an estimate ... of the amount of the taxes due for the period or periods for which the taxpayer is delinquent." United argues that this provision does not apply to it because it did file a tax return. The plain language of these sections, however, requires United to make a "return in payment of the taxes."

The Manager conducted an investigation of United's records to determine how much tax United owed pursuant to D.R.M.C. sections 53–49 and 53–117. The Manager determined that United had failed to make the required payment. Thus, in accordance with D.R.M.C. sections 53–49(b) and 53–117(b), the Manager notified United in writing of the assessment and demanded payment of the

unpaid taxes, plus penalty and interest. The delinquency notice to United specifically provided a manner to protest the Manager's assessment in accordance with D.R.M.C. sections 53–49 and 53–117. United failed to do so.

The policies underlying the exhaustion doctrine should apply to this case because the ordinance provided an administrative remedy to United. United was notified that it must pay the assessment within twenty days or petition for administrative review. United failed to avail itself of this procedure. The subject of taxation as provided by the Code is a home rule matter within the special expertise of the Manager of Revenue. *See Winslow,* 960 P.2d at 694–95.

Accordingly, no exception to the exhaustion doctrine being applicable in this case, I concur in the opinion and judgment of the court.