# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 16-50479

————

United States Court of Appeals
Fifth Circuit

**FILED**

November 29, 2017

Lyle W. Cayce
Clerk

CITY OF SAN ANTONIO, TEXAS, On Behalf Of Itself And All Other Similarly Situated Texas Municipalities,

Plaintiff - Appellee Cross-Appellant

v.

HOTELS.COM, L.P.; HOTWIRE, INCORPORATED; TRIP NETWORK, INCORPORATED, doing business as Cheaptickets.com; EXPEDIA, INCORPORATED; INTERNETWORK PUBLISHING CORPORATION, doing business as Lodging.Com; ORBITZ, L.L.C.; PRICELINE.COM, INCORPORATED; SITE59.COM, L.L.C.; TRAVELOCITY.COM, L.P.; TRAVELWEB, L.L.C.; TRAVELNOW.COM, INCORPORATED,

Defendants - Appellants Cross-Appellees

————

Appeals from the United States District Court
for the Western District of Texas

————

Before BARKSDALE, DENNIS, and CLEMENT, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

In this class action pursued by 173 Texas municipalities, primarily at issue is whether the service fee an online travel company (OTC) charges for facilitating a hotel reservation is included in the "cost of occupancy", and, therefore, subject to the municipalities' hotel occupancy tax ordinances. The district court concluded the service fee is included. VACATED and RENDERED.

No. 16-50479

I.

An OTC website allows a traveler to compare the rates for airlines, hotels, and rental-car companies, as well as request reservations from them. Regarding the ordinances at issue, OTCs do not own, operate, or manage hotels; instead, they transmit information and payments between travelers and hotels.

Hotels issue reservations through a number of means to maximize occupancy. They may issue them directly to consumers, or they may use third-party intermediaries, such as travel agents, tour operators, and OTCs.

When facilitating hotel reservations, OTCs use the "merchant model". Under that model, the hotel and the OTC enter into a contract by which the OTC agrees to display information about the hotel on the OTC's website, and the hotel agrees to provide reservations at a discounted room rate through that website. A hotel decides when to make reservations available to the OTCs, how many reservations to provide, and the room rate the hotel will charge.

Only the hotel can issue a reservation. When a traveler chooses to book a room through an OTC, it requests a reservation on the traveler's behalf. If the hotel chooses not to make a reservation available, the OTC cannot make the reservation. If the hotel issues the reservation, it does so in the traveler's name, and the OTC forwards a confirmation to the traveler.

Reservations made under this model are prepaid. When a traveler makes a reservation, the OTC charges the traveler an amount that includes the discounted room rate, a tax-recovery charge, and a service fee. Again, the room rate is the discounted rate negotiated for, and specified in, the OTC–hotel contract. The OTC does not separately state this discounted room rate, but instead combines it with part of its service fee, in order to keep the negotiated room rate confidential from competitors. The tax-recovery charge covers the estimated taxes the hotel will owe on its discounted room rate.

2

No. 16-50479

The OTC retains its service fee as compensation for its online services. Therefore, although the hotel determines the discounted room rate, an OTC decides the total amount the traveler pays when booking through the OTC's website. The OTC later forwards the amount of the discounted room rate and applicable taxes to the hotel, which remits the taxes to the taxing authority. The OTC is the merchant of record in the transaction with the traveler.

In 1987, the Texas legislature authorized municipalities to "impose a tax on a person who . . . pays for the use or possession or for the right to the use or possession of a room that is in a hotel". Tex. Tax Code § 351.002(a). Pursuant to this enabling act, Texas municipalities enacted hotel occupancy tax ordinances. *E.g.*, Dallas Code § 44-35; San Antonio Code § 31-68.

Under the ordinances, "[e]very person owning, operating, managing, or controlling any hotel" must collect and pay the occupancy tax to the taxing authority. Dallas Code § 44-36; San Antonio Code § 31-69(a). (Again, OTCs do not own, operate, or manage a hotel. Therefore, the only remaining subset is whether they "control" it.) And, even though 173 municipalities make up the class in this action, the ordinances use one of two common methods for defining the tax base, as illustrated by the Dallas and San Antonio ordinances.

Dallas-type ordinances tax "the consideration paid by the occupant of the room to the hotel". Dallas Code § 44-35(b). "Consideration" is defined as "the cost of a room in a hotel", but does not include "the cost of any food served or personal services rendered . . . not related to cleaning and readying the room or space for occupancy". Dallas Code § 44-34(1). San Antonio–type ordinances tax "the consideration paid for a sleeping room", or "the total price of a sleeping room or sleeping facility", including "all goods and services provided by the hotel". San Antonio Code § 31-68(b).

San Antonio filed this diversity action in May 2006, against OTCs for violations of the Texas tax code and municipal ordinances, and for conversion.

3

No. 16-50479

In May 2008, the district court certified a class of 175 Texas municipalities "whose ordinances contain language that requires every person owning, operating, managing or *controlling* any hotel to collect and remit hotel occupancy taxes". (Emphasis in original.) After the class was certified, however, two cities, including Houston, opted out.

The remaining 173 municipalities (cities) sought, *inter alia*, money damages for unpaid or underpaid hotel occupancy taxes, and a declaration that an OTC is required to collect and remit hotel occupancy taxes based on the amount it collects for the discounted room rate and service fee (the retail rate).

A jury trial began on 5 October 2009, to determine whether OTCs "control" hotels and are therefore subject to the ordinances. The jury heard testimony from 38 witnesses and reviewed over 150 exhibits. On 27 October, cities and OTCs moved for judgment as a matter of law; the court denied the motions from the bench the next day. Three days later, the jury found OTCs "control hotels". The jury was also instructed that, "[i]f you find that one or more [OTCs] control hotels, [to then] determine an amount that is due, *if any*, for failure to collect and pay hotel occupancy tax *in the event* that I decide that a[n OTC] has violated the ordinances". (Emphasis added.)

Accordingly, after the jury decided OTCs "control" hotels and calculated damages, the court addressed the "pure question of law": whether the retail rate, or the lesser discounted room rate the OTC pays the hotel, is included in the tax base. Almost two years after the jury verdict, the court, on 1 July 2011, rendered its findings of fact and conclusions of law, concluding the retail rate paid the OTC by the traveler, rather than the discounted room rate the OTC pays the hotel, is subject to the hotel occupancy tax.

On a parallel track, in 2007, Houston, which, as noted, opted out of this class action, and the Houston Sports Authority had sued OTCs in Texas state court to recover claimed unpaid occupancy taxes. *City of Houston v.*

4

No. 16-50479

*Hotels.com, L.P.*, 357 S.W.3d 706, 707 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). The Houston ordinance levied "a tax upon the *cost of occupancy* of any room furnished by any hotel". Houston Code § 44-102 (emphasis added). Houston and the Sports Authority asserted "the cost of occupancy" was the retail rate the consumer paid the OTC. *Houston*, 357 S.W.3d at 707–08.

By summary judgment, the trial court rejected their claims. *Id.* at 708. And, on 25 October 2011, an intermediate Texas court of appeals affirmed, holding the tax applied only to "the [discounted-room-rate] amounts paid to hotels". *Id.* The opinion was published after the district court, in this action, issued its July 2011 findings of fact and conclusions of law, but before it entered final judgment. The *Houston* court was aware of "cases filed in Texas federal courts" involving similar provisions, and was even asked to consider the findings of fact and conclusions of law in this class action, but declined to do so. *Id.* at 716–17 n.11.

After describing principles of statutory construction, both in general and specific to tax law, the *Houston* court explained that, "[u]nder the plain meaning of this [ordinance], the *cost of occupancy* [the scope of the tax base] is [the] amount for which three conditions are satisfied": (1) "the consideration at issue must have been paid or charged for the use or possession, or the right to use or possess, a hotel room"; (2) "the amount to be taxed must have been paid 'by the occupant of such room'", which includes "'through the means, work, or operations of' and 'in behalf of'"; and (3) "the amount to be taxed must have been paid 'to such hotel'". *Id.* at 711–14 (emphasis in original). The court concluded the "OTC's payment of the discounted [room] rate to the hotel meets these three conditions; the consumer's payment to the OTC does not". *Id.* at 714. Having decided the scope of the tax base, the court did not address whether OTCs "control" hotels. *See generally id.* The Texas Supreme Court denied review.

5

No. 16-50479

In the class action at hand, OTCs moved the district court to amend its findings and conclusions in the light of *Houston*, claiming, under the *Erie* doctrine, the court was required to rule that, as a matter of Texas law, only the discounted room rate the OTC pays the hotel is subject to hotel occupancy taxes. Despite previously acknowledging the scope of the tax base is a "pure question of law", the court denied OTCs' motion on the grounds that the *Houston* holding was specific to the Houston ordinance, and the larger evidentiary record in this class action compelled a different result.

On 4 April 2013, nearly four years after trial, the district court entered its first final judgment, awarding cities $55,146,489 in unpaid taxes, interest, and penalties. OTCs then pursued a renewed motion for judgment as a matter of law, or alternatively, motion for new trial; the court denied both motions on 20 February 2014. Two years later, the court issued an amended final judgment of $84,123,089 to include increased penalties, as well as the taxes and interest that had accrued since the first judgment in April 2013.

II.

This appeal and cross-appeal present numerous issues. OTCs claim, *inter alia*, they are entitled to judgment as a matter of law, or alternatively, a new trial because (1) they do not "control" hotels within the meaning of the ordinances; (2) only the discounted room rate the OTC pays the hotel, rather than the retail rate paid the OTC by the traveler, is the taxable "cost of occupancy" (scope of the tax base); and (3) the admission of certain trial evidence was unfairly prejudicial. Cities, on the other hand, seek additional penalties and interest. Only one issue, however, need be addressed: whether the retail rate, or only the discounted room rate paid to the hotel, is the taxable "cost of occupancy" for purposes of cities' hotel occupancy taxes. Because OTCs contend, as they did before the district court, that they are, *inter alia*, entitled

6

to judgment as a matter of law, we review *de novo.  E.g.*, *Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 624 (5th Cir. 2008).

It is more than well-known that, when, as here, diversity of citizenship is the basis for federal jurisdiction, we must apply state law "as announced by that state's highest court, or, in the absence of such a decision, we must predict what the highest court would decide if it confronted the same issue".  *In re Complaint of John E. Graham & Sons*, 210 F.3d 333, 337 (5th Cir. 2000) (citing *Transcon. Gas v. Transp. Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992)).  Along that line, in the absence of authority from the State's highest court, this court "must follow the decisions of intermediate state courts" unless there is "convincing evidence that the highest court of the state would decide differently".  *Stoner v. New York Life Ins., Co.*, 311 U.S. 464, 467 (1940); *see also James v. State Farm Mut. Auto. Ins. Co.*, 743 F.3d 65, 69 (5th Cir. 2014).  This is especially "true where[, as in this instance,] the intermediate state court has determined the precise question in issue", and "the highest court of the state has refused review".  *Stoner*, 311 U.S. at 467 (citing *West v. American Tel. & Tel. Co.*, 311 U.S. 223 (1940)).

Although the Texas Supreme Court has not addressed the issue at hand, an intermediate court of appeals has.  The ordinance at issue in *Houston* is similar to the ordinances cities use to support their claims here.  Indeed, Houston's ordinance is so similar that, as noted, Houston was originally a member of the class in this action, until it opted out to pursue its claims individually.  We therefore must follow the *Houston* court's interpretation of "cost of occupancy" unless we are persuaded the Texas Supreme Court would decide the matter differently.

There is no reason to believe the Texas Supreme Court would do so.  As an initial matter, it denied review of *Houston*.  And, even if it had granted review, Texas caselaw favors OTCs.  The Texas Supreme Court has

"consistently applied an ancient pro-taxpayer presumption:  The reach of an ambiguous tax statute must be construed 'strictly against the taxing authority and liberally for the taxpayer.' In other words, a tax must apply unequivocally". *TracFone Wireless, Inc. v. Comm'n on State Emergency Commc'ns*, 397 S.W.3d 173, 182 (Tex. 2013) (quoting *Morris v. Houston Indep. Sch. Dist.*, 388 S.W.3d 310, 313 (Tex. 2012) (per curium)).    The *Houston* court applied this presumption in construing "cost of occupancy".  *Houston*, 357 S.W.3d at 712. As OTCs assert:  the Texas Supreme Court in *TracFone* requiring such exacting "strictness in tax matters", shortly after it denied review in *Houston*, reinforces the *Houston* holding.  *TracFone*, 397 S.W.3d at 183.

Cities proffer two main reasons why this court should not follow the *Houston* interpretation of "cost of occupancy":  (1) this class action's record is much larger, and (2) the *Houston* court engaged in "one-side only" analysis of Houston's ordinance (by not specifically addressing Houston's interpretation of the ordinance after concluding the OTCs' reading was reasonable).  Their assertions, however, are unavailing.

It is true *Houston* was decided on summary judgment, whereas this class action included a jury trial on the control issue and has an appellate record of over 50,000 pages.  Nonetheless, cities point to no specific, material differences in the record that compel a different conclusion regarding the amount subject to tax.  Moreover, as the district court observed, the scope of the tax base is a "pure question of law".

Nor do we take issue with the *Houston* court's claimed "one-side[d]" analysis.  As that court explained, "a statute that is susceptible to more than one reasonable interpretation is ambiguous", and "[a] taxing provision is construed strictly against the taxing authority and liberally in favor of the entity that the authority seeks to hold liable; thus, any ambiguity in the statute

must be resolved in favor of the taxpayer". *Houston*, 357 S.W.3d at 712 (internal citation omitted).

Years of litigation and conflicting results in several courts confirm the scope of the hotel occupancy tax provisions does not clearly include the retail rate. In contrast to the district court in this class action concluding the scope of the tax base is that rate, two other decisions in Texas have ruled the scope is the discounted room rate. *City of Orange v. Hotels.com, LP*, No. 1:06–CV–413, 2007 WL 2787985 (E.D. Tex. Sept. 21, 2007) *and Houston*, 357 S.W.3d 706. Therefore, from cities' point of view, at best, the hotel occupancy tax ordinances are ambiguous, in which case the ambiguity is resolved in favor of OTCs; at worst, the ordinances can only reasonably be read to tax the discounted room rate paid to hotels. Because, in the light of the pro-taxpayer presumption, the *Houston* court agreed that the "cost of occupancy reasonably can be read to apply only to the [discounted room rate] paid to the hotels", there was no need for the court to specifically address in the opinion the opposing interpretation of Houston's ordinance. *Houston*, 357 S.W.3d at 712 (internal quotation marks omitted).

That does not mean, however, the *Houston* court did not consider Houston's reasoning in reaching its decision. The court addressed many of Houston's points throughout the opinion, many of which cities raise here. For example, both Houston and cities asserted "the ordinance[s] cannot be read literally because *hotel* is defined in the ordinance[s] as 'a building' . . . . [I]f the ordinance[s are] read in accordance with [their] plain meaning, then no taxes could be collected, because no one pays a building". *Id.* at 714 n.6 (emphasis in original).

The *Houston* court rejected this claim because "the enacting body did not intend the word *hotel* in [the relevant section] to refer to a building, but instead used *hotel* in the sense" of "a commercial establishment providing lodging". *Id.*

No. 16-50479

at 714 & n.6 (emphasis in original).  In addition to rejecting this absurd-results contention, the court also refused to write "paid to the hotel" out of the ordinance, instead specifically stating the taxable amount is "that which is paid to the same hotel that furnished the room".  *Id.* at 714.

Moreover, the court rejected another absurd-results claim cities advance here:  reading the requirement that the amount taxed "must have been paid 'by the occupant'" according to its plain meaning would lead to an "absurd result in that the tax would apply only when the hotel received payment directly from the occupant".  *Id.* at 713, 714 n.5.  Cities contend customers can avoid the tax whenever "the money paid for the right to occupancy is collected by an OTC, rather than being paid 'to the hotel'".

In response, the court explained that, "[i]n enacting the ordinance, the City [of Houston] could not have used the word *by* to mean only 'directly from'" because it would "be inconsistent with the [] stated intent to tax the cost of *occupancy* in that it would allow" customers to avoid the tax "simply by routing payment through a third party".  *Id.* at 714 n.5 (emphasis in original).  The plain meaning of "by" also encompasses "meanings such as 'through the means, work, or operations of' and 'in behalf of'".  *Id.* at 713 (citing *By*, Webster's New World College Dictionary 192).  Because the plain meaning of the ordinance encompasses money paid to a hotel on behalf of its occupants, a customer cannot avoid the tax simply by paying through a third-party.

The *Houston* court found such admonitions against a plain-meaning interpretation unavailing, and so do we.  In sum, "[t]he hotel offers *occupancy* in exchange for payment of the invoiced discounted [room] rate.  An OTC, on the other hand, does not have rooms or *occupancy*".  *Id.* at 714 (emphasis in original).  "Instead, the OTCs have websites and provide information." *Id.* at 715.  Therefore, only the discounted room rate paid the hotel is the cost of occupancy.

10

No. 16-50479

*Houston* is on point, and, in the light of taxpayer-favorable Texas law, we are not convinced the Texas Supreme Court would decide the matter differently than the *Houston* court; therefore, that court's interpretation of "cost of occupancy" controls:   the hotel occupancy tax applies only to "the discounted [room] rate paid by the OTC to the hotel". *Id.*

The differing language in the ordinances does not affect the outcome. Dallas-type ordinances tax the amount "paid by the occupant of the room *to the hotel*".   Dallas Code § 44-35(b) (emphasis added).   Moreover, the taxable consideration excludes costs "not related to cleaning and readying the room or space for occupancy".   Dallas Code § 44-34(1)(A).   Only the discounted room rate the OTC pays to the hotel can be "related to cleaning and readying the room or space for occupancy". *See id.*   Similarly, San Antonio–type ordinances tax the amount "paid for a sleeping room" to include "all goods and services provided *by the hotel*".   San Antonio Code § 31-68(b) (emphasis added).   Again, only the discounted room rate paid to the hotel covers "services provided by the hotel".

Cities concede OTCs have been collecting taxes on the discounted room rate paid to the hotel, and the hotels have been remitting them.   Because the only monetary amounts at issue in this class action are those not included in the scope of the hotel occupancy tax base, as limited by our above holding, OTCs are not liable.

III.

For the foregoing reasons, the judgment is VACATED and judgment is RENDERED for OTCs.