The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
January 25, 2018

## 2018COA8

**No. 16CA1901, *Town of Breckenridge v. Egencia, LLC* — Taxation — Municipalities — Home Rule Cities — Accommodation Tax**

A division of the court of appeals concludes that online travel companies are not required to remit to the Town of Breckenridge accommodation taxes because they are not lessors or renters of hotel rooms and therefore have no possessory interest in those rooms, for purposes of Breckenridge's hotel accommodation tax ordinance. In its analysis, the division distinguishes Breckenridge's accommodation tax from Denver's lodging tax, which was imposed on the online travel companies in *City & County of Denver v. Expedia, Inc.*, 2017 CO 32.

The division also considers and rejects Breckenridge's contentions that the district court erred in applying the summary

judgment standard, that its sales tax claim was improperly dismissed for lack of subject matter jurisdiction, that its motion for class action certification should have been granted because common questions predominated the class, and that the district court erred in dismissing Breckenridge's common law claims.

Accordingly, the division affirms the holding of the district court.

Court of Appeals No. 16CA1901
Summit County District Court No. 11CV420
Honorable Karen A. Romeo, Judge

Town of Breckenridge, Colorado,

Plaintiff-Appellant,

v.

Egencia, LLC; Expedia, Inc.; Hotels.com, L.P.; Hotels.com, GP, LLC; Hotwire, Inc.; Internetwork Publishing Corporation, d/b/a Lodging.com; Lowestfare.com, Inc.; Orbitz, Inc.; Orbitz, LLC; Priceline.com, Incorporated; Site59.com, LLC; TravelNow.com, LP; Travelport, Inc., f/k/a Cendant Travel Distribution Services Group, Inc.; Travelscape, LLC; Travelweb, LLC; Trip Network, Inc., d/b/a Cheaptickets.com,

Defendants-Appellees.

---

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE GRAHAM
Webb, J., concurs
Terry, J., specially concurs

Announced January 25, 2018

---

Lewis Roca Rothgerber Christie LLP, Michael D. Plachy, Thomas M. Rogers III, Joy Allen Woller, Denver, Colorado, for Plaintiff-Appellant

Connelly Law LLC, Sean Connelly, Denver, Colorado; Davis Graham Stubbs LLP, Jason M. Lynch, Denver, Colorado, for Defendants-Appellees

¶ 1    We are asked to determine whether online travel companies (OTCs) are required to collect and remit accommodation and sales taxes to the Town of Breckenridge, Colorado, on hotel rooms they book through their respective internet websites. We conclude that they need not collect and remit such taxes.

¶ 2    Breckenridge, the plaintiff, seeks to collect accommodation and sales taxes from sixteen OTCs, the defendants: Egencia, LLC; Expedia, Inc.; Hotels.com, L.P.; Hotels.com, GP, LLC; Hotwire, Inc.; Internetwork Publishing Corporation d/b/a Lodging.com; Lowestfare.com, Inc.; Orbitz, Inc.; Orbitz, LLC; Priceline.com, Incorporated; Site59.com, LLC; TravelNow.com, LP; Travelport Inc. f/k/a Cendant Travel Distribution Services Group, Inc.; Travelscape, LLC; Travelweb, LLC; Trip Network, Inc. d/b/a Cheaptickets.com; and yet unidentified companies, Does 1 through 1000.

¶ 3    On appeal, Breckenridge makes five contentions. First, it contends that the district court erred in determining that the OTCs were not "renters" or "lessors" for purposes of Breckenridge's accommodation tax ordinance, relying on the Colorado Supreme Court's decision in *City & County of Denver v. Expedia, Inc.*, 2017

1

CO 32 (plurality opinion). Second, it contends that the district court misapplied the summary judgment standard by resolving material issues of fact. Third, it contends that its sales tax claim should not have been dismissed for lack of subject matter jurisdiction. Fourth, it contends that its motion for class action certification should have been granted because common questions predominate and class action was the superior method of relief. Fifth, it contends that its common law claims were improperly dismissed. We consider and reject each contention.

## I. Background

### A. Overview of OTCs

¶ 4 The OTCs maintain websites through which travelers may book reservations for hotel accommodations and other travel-related services. The OTCs transact their online businesses in two ways. The first is known as the "agency model," which describes transactions where the OTC is the actual agent of a hotel. The second is the "merchant model," which was used here.

¶ 5 Under the merchant model, an OTC first contracts with a hotel. These contracts offer rooms to an OTC at a discounted rate — a fixed percentage of the price the hotel would charge travelers

directly for the rooms. The OTC describes the hotel and its facilities on its website and allows customers logging onto its website to book reservations for that hotel.

¶ 6 When facilitating reservations, an OTC neither purchases nor reserves rooms in advance. Rather, the OTC coordinates information between travelers and hotels. Only hotels can issue reservations. When a purchaser requests a hotel room, the chosen OTC's computer system communicates with a hotel's central reservation system to find a specific room at a specified rate. If available, the purchaser must agree to the hotel's cancellation policy and terms of occupancy before the hotel will accept the reservation. If the hotel accepts the reservation, it will provide a confirmation number in the customer's name and supply this number to the OTC. The OTC forwards the confirmation number then collects and processes the customer's payment.

¶ 7 When a customer arrives at the hotel, the hotel registers the customer as a guest before assigning a room. Assignments are made only when a room is available and the customer meets the hotel's terms and conditions for occupancy. After the customer

concludes his stay, the OTC transfers payment to the hotel.  The hotel then remits the collected taxes to Breckenridge.

¶ 8     As relevant here, Breckenridge imposes an accommodation tax "of three and four-tenths percent (3.4%) on the price paid for the leasing or rental of any hotel room, motel room, or other accommodation located in the town."  Breckenridge Town Code § 3-4-3 (B.T.C.).  In addition to the accommodation tax, Breckenridge collects a 2.5% sales tax.  B.T.C. § 3-1-5.  Unlike the accommodation tax, the sales tax ordinance requires Breckenridge to seek administrative review before petitioning the district court for relief to collect allegedly unpaid sales taxes.  B.T.C. §§ 3-1-35, 3-1-36.

B.    Procedural History

¶ 9     Breckenridge instituted this action to recover from the OTCs unpaid accommodation and sales taxes.  In its initial complaint, Breckenridge alleged that the OTCs were responsible for collecting and remitting taxes associated with hotel reservations.  Breckenridge asserted five causes of action: declaratory judgment, violations of municipal ordinances, conversion, civil conspiracy, and unjust enrichment.

4

¶ 10 The OTCs then filed a motion to dismiss, which was partially granted. The district court agreed that no cause of action existed in respect to the sales tax claim because Breckenridge had failed to exhaust its administrative remedies and none of the exceptions to exhaustion applied. Consequently, the court determined that it lacked subject matter jurisdiction to decide that claim. But, the district court refused to dismiss the accommodation tax claim, explaining that Breckenridge had sufficiently asserted a claim in regard to the accommodation tax.

¶ 11 Breckenridge then sought class certification for fifty-five home rule cities that also levy a lodger's or accommodation tax, seeking to impose taxes, interest, and penalties on the OTCs in favor of the putative class. The district court denied class certification on multiple grounds. First, the court concluded that certification under C.R.C.P. 23(b)(2) was inappropriate because Breckenridge was primarily seeking monetary damages. Second, the court determined that common questions did not predominate over questions affecting only individual members of the putative class, so class certification was not superior to other available remedies and, therefore, C.R.C.P. 23(b)(3) certification was unavailable.

Third, the court held that certification was inappropriate because at least nine of the unnamed class members had failed to exhaust their own administrative remedies.

¶ 12    Thereafter, the parties filed cross-motions for summary judgment. Resolving those motions in favor of the OTCs, the district court analyzed the plain language of the accommodation tax ordinance, in addition to the OTCs' role in the reservation process. Specifically, the court determined that it was beyond dispute that OTCs do not maintain hotel room inventories, any customer service the OTCs provide is related only to the facilitation of reservations and not the actual rental or service of accommodations, and the hotels — not the OTCs — are primarily involved in a customer's reservation process. Based on those undisputed facts and the plain language of the ordinance, the court concluded that the OTCs were not renters or lessors and, therefore, not required to collect and remit the accommodation tax.

## II.    The District Court Properly Determined that the OTCs are not Subject to Breckenridge's Accommodation Tax

¶ 13    Breckenridge contends that the district court erred in concluding that OTCs are neither "lessors" nor "renters" of hotel

6

rooms.  Additionally, Breckenridge asserts that the district court erred when it relied on *Expedia, Inc. v. City & County of Denver*, 2014 COA 87 (*Expedia I*), which was reversed by the Colorado Supreme Court in a plurality decision.  *City & Cty. of Denver v. Expedia, Inc.*, 2017 CO 32 (*Expedia II*).  We disagree.

¶ 14    Who is responsible for collecting and remitting accommodation taxes under the B.T.C.?  This question hinges on the meaning of "lessor," "renter," and "furnish," as used in sections 3-4-1, 3-4-3, and 3-4-4 of that code.

¶ 15    Breckenridge contends that the OTCs are renters or lessors under the code because they sell the legal right to use hotel rooms in exchange for consideration.  Because the accommodation tax does not require a person to have physical possession of the right sold, Breckenridge asserts that the OTCs are capable of leasing or renting even without physical possession of the hotel rooms.

¶ 16    The OTCs respond that they are not lessors or renters because they do not own, possess, or have any interest in hotel rooms; therefore, they have no power to convey use or occupancy — in other words, to lease hotel rooms — to others.  *See City of Philadelphia v. City of Philadelphia Tax Review Bd.*, 37 A.3d 15, 20

(Pa. Commw. Ct. 2012) (no rental occurs until a customer checks in at the hotel and receives the right to a room). Rather, they contend that OTCs are technology companies that act as intermediaries between purchasers and hotels.

¶ 17 The district court agreed with the OTCs that they are not lessors or renters subject to the accommodation tax and, instead, are intermediaries. Relying on dictionary definitions, the court found that a "lessor" or "renter" is a "person or business that conveys via a contract the right to use, possess, or occupy accommodations for consideration." Because OTCs act merely as intermediaries and, therefore, lack a possessory interest in the lodging, the district court found that they are not subject to Breckenridge's accommodation tax.

## A. Standard of Review

¶ 18 We review a district court's grant of summary judgment and issues of statutory interpretation de novo. *Robinson v. Legro*, 2014 CO 40, ¶ 10; *Bd. of Cty. Comm'rs v. ExxonMobil Oil Corp.*, 192 P.3d 582, 585 (Colo. App. 2008), *aff'd*, 222 P.3d 303 (Colo. 2009). When reviewing a municipal ordinance, our primary task is to give effect to the intent of the drafters, which we attempt to discern by looking

8

first to the ordinance's plain language. *Jackson & Co. v. Town of Avon*, 166 P.3d 297, 299 (Colo. App. 2007). If we can give effect to the ordinary meaning of the words used by the drafter, the ordinance should be construed as written. *Id.* But if the ordinance is ambiguous and therefore susceptible of multiple interpretations, we may resort to various aids of statutory construction in determining intent. *Jefferson Cty. Bd. of Equalization v. Gerganoff*, 241 P.3d 932, 935 (Colo. 2010). We must also refrain from rendering a judgment that would be inconsistent with the municipal body's legislative intent and must avoid any interpretation that would produce an illogical or absurd result. *Id.*; *Waste Mgmt. of Colo., Inc. v. City of Commerce City*, 250 P.3d 722, 725 (Colo. App. 2010).

¶ 19     Interpreting a tax code requires a similar analysis. *Welby Gardens v. Adams Cty. Bd. of Equalization*, 71 P.3d 992, 995 (Colo. 2003). We must construe it as a whole to give consistent, harmonious, and sensible effect to all its parts. *Id.* Additionally, however, we adhere to Colorado's longstanding rule of construction that "tax provisions like those at issue here will not be extended beyond the clear import of the language used, nor will their

operation be extended by analogy." *Waste Mgmt.*, 250 P.3d at 725 (citing *City of Boulder v. Leanin' Tree, Inc.*, 72 P.3d 361, 367 (Colo. 2003)). We construe all doubts against the government and in favor of the taxpayer. *Id.*

### B. The Accommodation Tax Ordinance's Language

¶ 20 B.T.C. section 3-4-1 (the preamble) states, in part, as follows:

> [The] legislative intent of the town council in enacting this chapter is that every person who, for consideration, leases or rents any hotel room, motel room, or other accommodation located in the town shall pay and every person who furnishes for lease or rental any such accommodation shall collect the tax imposed by this chapter.

¶ 21 An implementing provision provides that "an excise tax of three and four-tenths percent (3.4%) [shall be assessed] on the price paid for the leasing or rental of any hotel room, motel room, or other accommodation located in the town." B.T.C. § 3-4-3.

¶ 22 The code also imposes liability for unpaid taxes on "any lessee or renter of a hotel room, motel room, or other accommodation located in the town" who fails to pay or "any lessor or renter of such accommodation" who fails to collect the accommodation tax. B.T.C. § 3-4-4(A).

¶ 23    The B.T.C. does not define the terms "leasing," "renting," "lessor," or "renter."  Nor does the code define the operative term used in its preamble, "furnishes for lease or rental."

¶ 24    When a statute fails to define an integral term, we may refer to a dictionary to determine the common usage of the term.  *See Roalstad v. City of Lafayette*, 2015 COA 146, ¶ 34 (If a "statute does not define a term, the word at issue is a term of common usage, and people of ordinary intelligence need not guess at its meaning, we may refer to dictionary definitions in determining the plain and ordinary meaning." (quoting *Mendoza v. Pioneer Gen. Ins. Co.*, 2014 COA 29, ¶ 24)).  Thus, we look to dictionary definitions of the terms "lessor," "renter," "lease," "rent," and "furnish" to ascertain their plain and ordinary meanings.

¶ 25    Black's Law Dictionary defines those terms as follows:

- "lessor" (n.) is "[s]omeone who conveys real or personal property by lease; esp[ecially], landlord";
- "lease" (n.) is a "contract by which a rightful possessor of real property conveys the right to use and occupy the property in exchange for consideration," and (v.) is "[t]o grant the possession and use of (land, buildings, rooms,

11

movable property, etc.) to another in return for rent or other consideration"; and

- "rent" (n.) is "[c]onsideration paid, usu[ally] periodically, for the use or occupancy of property."

Black Law's Dictionary 1024, 1026, 1043, 1488 (10th ed. 2014).

¶ 26    Similarly, Webster's Third New International Dictionary defines the terms as follows:

- "lessor" (n.) is "one that surrenders possession of real estate under a lease";

- "lease" (n.) is a "a contract by which one conveys lands, tenements, or hereditaments for life, for a term of years, or at will or for any less interest than that of the lessor, usu[ally] for a specified rent or compensation," and (v.) is "to grant or convey to another by lease";

- "rent" (n.) is "income from a property," and "a piece of property that the owner allows another to use in exchange for a payment in services, kind, or money";

- "renter" (n.) is "one that rents: as . . . the lessee or tenant of lands, tenements, or other property"; and

- "furnish" means "to provide or supply with what is needed."

Webster's Third New International Dictionary 923, 1286, 1297, 1923 (2002).

¶ 27    These definitions clarify that a person who rents or leases or furnishes for rent to another is one who has a possessory interest in the property and has the legal ability to supply the property.

¶ 28    Here, the OTCs are not the "rightful possessor[s]" of hotel rooms. Black's Law Dictionary 1024 (10th ed. 2014) (defining lease). The district court found that OTCs cannot pledge, assign, or use hotel properties. Instead, hotels, as property owners, maintain possession of the hotel rooms throughout the transaction.

¶ 29    Breckenridge argued before the district court that the OTCs acquire inventory. However, the court found that numerous operating agreements explicitly state that the OTCs have no right or obligation to acquire an inventory of rooms. Further, the court found that inventory belongs to the hotel and is only purchased by the OTC immediately before being passed along to the consumer.

¶ 30    Breckenridge also contends that the code does not impose any requirement that a person who leases or rents lodging have physical

13

possession of that room. Therefore, Breckenridge asserts that the OTCs need not have physical possession of the hotel rooms to qualify as renters or lessors. However, the physical possession requirement is inherent in the plain and ordinary meaning of renting and leasing. Because the hotels maintain possession of the rooms and are the sole grantors of the right of occupancy, hotels are lessors or renters and OTCs are essentially brokers.

¶ 31     A broker is an "agent who acts as an intermediary or negotiator, esp[ecially] between prospective buyers and sellers." Black's Law Dictionary 232 (10th ed. 2014). Notably, a "broker usu[ally] does not have possession of the property" at issue. *Id.* Here, the OTCs, like traditional brokers, do not possess the hotel rooms during the entirety of the transaction. They may only acquire the right to use a room, which is immediately passed along to the purchaser when the hotel issues a confirmation number in the purchaser's name.

¶ 32     They also cannot "grant the possession and use of" hotel rooms because they are not the rightful possessors. OTCs do not issue or furnish reservations; they facilitate them, at times and rates set by a hotel pursuant to their contracts. Ultimately, a hotel,

not an OTC, grants a right of occupancy to guests upon check-in. Consequently, an OTC is more akin to a broker.

¶ 33    Moreover, reading the accommodation tax statute as a whole indicates that the accommodation tax applies only to those who have a possessory interest in the accommodation being taxed. Turning to B.T.C. section 3-4-2, the code defines hotel room, motel room, or other accommodation as "[a]ny room or other accommodation in any hotel . . . or any such similar place to any person who, for consideration, *uses, possesses, or has the right to use or possess* such room or other accommodation for a total continuous duration of less than one month." (emphasis added.)  A hotel guest does not have the right to use or possess a hotel room until she is registered at the hotel.  An OTC cannot grant this right.

¶ 34    In *Village of Bedford Park v. Expedia, Inc.*, 876 F.3d 296 (7th Cir. 2017), the court was presented with facts similar to those here. Thirteen Illinois municipalities sought to impose taxes on the OTCs. Applying an analysis like that of the district court here, the court determined that renting implies ownership and granting possession of property.  *Id.* at 305.  Since the OTCs had no possessory interest and were not engaged in the business of owning, operating, or

15

leasing, and could not independently grant customers access to rooms, they could not be liable for collecting and remitting taxes. *Id.* The various ordinances applied by the Illinois municipalities used language like that adopted by Breckenridge. Also, in *City of San Antonio v. Hotels.com, L.P.*, 876 F.3d 717 (5th Cir. 2017), the Fifth Circuit determined that OTCs do not have an inventory of rooms for occupancy. Persuaded by the analysis in *Bedford Park*, we conclude that, under the Breckenridge ordinance, an OTC does not have an interest that would allow it to furnish for rent any hotel room. On the contrary, it appears that the OTCs only "furnish" purchasers the opportunity to rent rooms from hotels.

¶ 35    Therefore, construing the statute as a whole and according to its plain meaning, we conclude that the OTCs are not subject to Breckenridge's accommodation tax.[1]

### C.    *Expedia II* is not Dispositive

¶ 36    In addition to arguing that the OTCs qualify as renters and lessors of hotel rooms, Breckenridge contends that *Expedia II*,

---

[1] As an additional argument, Breckenridge contends that OTCs should pay taxes on the room rate charged plus services fees. Because we determine that the OTCs are not liable for accommodation taxes, we need not address this contention.

which concluded that OTCs are liable under Denver's lodger's tax, is dispositive for two reasons. First, Breckenridge asserts that Denver's lodger's tax is substantially similar to Breckenridge's accommodation tax. Second, Breckenridge argues that we should reverse the district court's decision because it relied on *Expedia I*, which was ultimately overturned. We are not persuaded.

¶ 37    In *Expedia II*, ¶ 11, the City and County of Denver sought to impose its lodger's tax on the OTCs, which requires "vendors" to collect and remit the prescribed tax on the purchase price of any furnished lodging. The Denver ordinance defines "vendor" as a "person making sales of or furnishing lodging," and defines "sale" as "furnishing for consideration." *Id.* at ¶ 39 (quoting Denver Revised Municipal Code § 53-170(4), (8) (D.R.M.C.)). The plurality determined that "furnishing lodging for consideration . . . refers to selling, or providing for consideration, the right to overnight use of rooms or accommodations in the enumerated hotel-like facilities." *Id.* at ¶ 23. But, "'lodging' does not refer to a room, as a commodity, or even title or a right of ownership of a room, but rather to the right of overnight use of rooms . . . ." *Id.* The opinion rendered by Justice Coats, Justice Márquez, and Justice Boatright held that

17

OTCs are vendors, for purposes of the lodger's tax, because they furnish lodging for consideration. *Id.* at ¶ 22.

¶ 38     However, Breckenridge's reliance on Justice Coat's plurality decision in *Expedia II* is misplaced. "When a fragmented [c]ourt decides a case and no single rationale explaining the result enjoys the assent" of a majority of justices, *Marks v. United States*, 430 U.S. 188, 193 (1977), "the holding of the [c]ourt may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Id.* (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976) (plurality opinion)). Accordingly, Justice Hood's concurrence in *Expedia II* is instructive.

¶ 39     Although the concurrence agreed that OTCs are liable under the lodger's tax, the concurrence reached this decision without using interpretive aids. Instead, the concurrence concluded that the plain language of the ordinance makes sufficiently clear that the OTCs qualify as vendors.

¶ 40     In its analysis, the concurrence defined "to furnish" as providing or supplying rooms to "any person who for consideration uses or has the right to use such rooms." *Expedia II*, ¶ 42 (Hood, J., concurring in the judgment). It also noted that nothing in the

definition of furnish, nor in the ordinance, limits the term to the physical provision of a hotel room. *Id.* Therefore, because a customer's entire transactional relationship is with the OTC, the OTCs clearly "provide or supply rooms to customers who pay consideration to the OTCs in exchange for rooms or the right to use rooms." *Id.* at ¶ 43.

¶ 41 Breckenridge argues that we should extend the reasoning of *Expedia II* to the instant case and conclude that the OTCs are subject to the accommodation tax because they furnish lodging for consideration. While this argument has some appeal, it overlooks the different contexts surrounding the term "furnish," as used in the Denver and Breckenridge codes. In *Expedia II*, the concurrence explained that the duty to collect Denver's lodging tax is imposed on vendors who "make[] sales of or furnish[] lodging to a purchaser in the city." *Expedia II*, ¶ 41 (quoting D.R.M.C. § 53-170(8)). For purposes of the Denver lodging tax, furnishing is defined as "provid[ing] or suppl[ying] to any person who for consideration uses or has the right to use such rooms." *Id.* at ¶ 42.

¶ 42 Under B.T.C. section 3-4-1, the duty to collect the accommodation tax is imposed on those who "furnish[] [lodging] for

lease or rental." The use of "furnish" in this context is distinguishable from that in Denver's ordinance. Under Denver's lodging tax, "furnishing lodging" indicates making hotel rooms available to purchasers. On the other hand, the Breckenridge code imposes liability only on those who furnish property for leasing or renting. And only those with a possessory interest can furnish property for leasing or renting. Accordingly, OTCs only furnish the opportunity to rent hotel rooms from hotels.

¶ 43    Furthermore, Breckenridge's argument ignores the different terms used to describe the liable parties in the Denver and Breckenridge codes. Unlike the term "vendor," (which is used in the Denver code and encompasses all parties that provide or supply rooms for consideration) the plain meaning of "renter" or "lessor," restricts liability to only those who have a possessory interest in the property.

¶ 44    Additionally, even if we were to overlook the words "lease" and "rental," the concept of furnishing is contained in the preamble to the B.T.C. We are not persuaded that the concept of furnishing as used in the context of a vendor, as in *Expedia II*, should inform our decision here simply because the preamble uses the term

20

"furnishes."  But, a term used in the preamble to a statute cannot be used to contradict the operative terms of the statute.  A "preamble can neither restrain nor extend the meaning of an unambiguous statute."  2A Norman Singer, *Sutherland on Statutory Construction* § 47.04, at 295 (7th ed. 2007); *cf. Dist. Landowners Tr. v. Adams Cty.*, 104 Colo. 146, 150, 89 P.2d 251, 253 (1939) (where it was asserted that a preamble had been violated, the preamble could "not be invoked apart from specific provisions" of the statute).

¶ 45    We are also not persuaded that we must overturn the district court's decision because it relied on *Expedia I.*  The district court conducted a thorough analysis of the language of the ordinance and its application to the OTCs.  It was not until after the district court concluded that the accommodation tax did not apply to the instant case that the court discussed *Expedia I.*  And in doing so, the court observed that its holding was consistent with the division's ruling in *Expedia I.*  Therefore, we cannot determine that the court relied upon *Expedia I* in making its decision.

### III. The District Court Properly Granted Summary Judgment for Breckenridge's Accommodation Tax Claim

¶ 46    Next, Breckenridge contends that the court erred in granting summary judgment because genuine issues of material fact exist as to (1) whether OTCs acquire inventory; (2) whether OTCs provide customer service; and (3) the extent to which the hotels are involved in merchant model transactions. We disagree.

#### A. Standard of Review

¶ 47    We review a court's grant of summary judgment de novo. *Williams v. State Farm Mut. Auto. Ins. Co.*, 195 P.3d 1158, 1160 (Colo. App. 2008). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions, together with any affidavits, establish that there is no genuine issue of a material fact, and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *City of Longmont v. Colo. Oil & Gas Ass'n*, 2016 CO 29, ¶ 9. A triable issue of fact is one in which reasonable people could reach different conclusions about the evidence. *People in Interest of S.N.*, 2014 COA 116, ¶ 24.

¶ 48    The moving party has the burden of establishing the absence of a genuine issue of material fact. *Gibbons v. Ludlow*, 2013 CO 49,

¶ 11.  The moving party "need only identify those portions of the record and affidavits which demonstrate an absence of a genuine issue of material fact."  *Id.*  If the nonmoving party cannot produce sufficient evidence to establish a triable issue, the moving party is entitled to summary judgment as a matter of law.  *Id.*  A genuine issue of fact cannot be raised simply by means of argument.  *People in Interest of J.M.A.*, 803 P.2d 187, 193 (Colo. 1990).

B.  There is No Genuine Issue of Material Fact

¶ 49  Breckenridge failed to meet its burden of producing sufficient evidence to establish that a genuine issue of fact exists as to whether OTCs acquire inventory, whether the OTCs provide customer service, and the extent of the hotels' involvement in merchant model transactions.

¶ 50  First, Breckenridge argues that the court improperly resolved the issue as to whether OTCs acquire inventory, which could support the contention that they are lessors or renters. Breckenridge asserts that it provided evidence contrary to the OTCs' argument that they do not acquire inventory because they merely act as intermediaries.  Specifically, Breckenridge points to the annual Securities and Exchange Commission (SEC) reports where

the OTCs allegedly admit to acquiring some inventory. But, after analyzing the SEC reports, the court found, and we agree, that the SEC filings refer primarily to the hotel's inventory. And, any mention of the OTCs' inventory concerns the inventory needed to facilitate a reservation. Moreover, OTCs enter into non-exclusive operating agreements in which OTCs agree to display information about a hotel, but make clear that OTCs have no right or ability to issue reservations themselves. Therefore, none of the record evidence marshalled by Breckenridge contradicts the numerous SEC reports and agreements between the parties indicating that hotels, not the OTCs, possess inventory. Consequently, Breckenridge failed to establish a triable issue of fact.

¶ 51 Second, Breckenridge argues that the court improperly resolved whether and to what extent the OTCs provide customer service. Specifically, Breckenridge contends that the taxable transaction arises when the OTCs accept a customer's payment in exchange for the right to use the accommodation. However, the OTCs' involvement in customer service relating to room reservations is immaterial because it does not indicate possessory interest.

Because no genuine issue of *material* fact was presented, summary judgment was appropriate.

¶ 52 Third, Breckenridge argues that the court improperly determined the degree to which hotels are involved in merchant model transactions. It says that it presented evidence that a consumer's entire transaction is with the OTC, compensation is paid to the OTC, and no additional compensation is paid to the hotel after the purchaser becomes a guest. Breckenridge contends that the court ignored its evidence. But, none of these facts advance Breckenridge's arguments because they do not indicate a possessory interest. Therefore, these facts are immaterial. *See Peterson v. Halsted*, 829 P.2d 373, 375 (Colo. 1992) ("A material fact is simply a fact that will affect the outcome of the case.").

¶ 53 Because reasonable people could not reach different conclusions on the three issues presented, we conclude that the court's entry of summary judgment was proper.

## IV. The District Court Lacked Subject Matter Jurisdiction to Address the Sales Tax Claim

¶ 54 Breckenridge contends that the district court erred in concluding that it lacked subject matter jurisdiction over its sales

tax claim because Breckenridge failed to exhaust administrative remedies. We discern no error.

¶ 55    In reviewing a district court's ruling on a jurisdictional issue, we will uphold its factual findings unless they are clearly erroneous, and we evaluate all legal conclusion de novo. *Tidwell v. City & Cty. of Denver*, 83 P.3d 75, 81 (Colo. 2003).

¶ 56    There is a "general jurisdictional requirement that a party exhaust available administrative remedies before seeking relief in a district court." *City & Cty. of Denver v. United Air Lines, Inc.*, 8 P.3d 1206, 1212 (Colo. 2000). When "complete, adequate, and speedy administrative remedies are available, a party must pursue these remedies before filing suit in district court." *Id.* Absent an exhaustion of administrative remedies, judicial review has been particularly disfavored in tax cases. *Davison v. Bd. of Cty. Comm'rs*, 41 Colo. App. 344, 348, 585 P.2d 315, 348 (1978). The exhaustion requirement is subject to exceptions.

¶ 57    First, exhaustion is not required when it is clear beyond a reasonable doubt that administrative review would be futile because the agency will not provide the relief requested. *United Air Lines*, 8 P.3d at 1213. Second, a party can circumvent exhaustion

requirements when the issue presents a matter of law that the agency lacks the authority or capacity to determine. *Id.* Breckenridge argues that it was not required to exhaust its own administrative remedies because doing so would be futile and the question of whether OTCs are subject to the sales tax was a question of law not subject to exhaustion requirements. We are not convinced.

¶ 58 The B.T.C. explicitly provides that the administrative authority has jurisdiction over the enforcement and collection of Breckenridge's sales tax. The code states, in relevant part, that in the event "any person neglects or refuses to make a return in payment of the sales tax or to pay any sales tax as required," the "finance director shall make an estimate . . . of the amount of taxes due . . . ." B.T.C. § 3-1-32(B)(1). Following the finance director's review, a person can challenge the final decision by "proceed[ing] to have [the finance director's final decision] reviewed by the district court." B.T.C. § 3-1-36.

¶ 59 It is evident from the code that a party's first step in seeking relief for unpaid sales taxes is to petition for administrative review from the finance director. And, only after undergoing

administrative review can Breckenridge petition for relief from the district court.

¶ 60    Breckenridge circumvented its own procedural requirements by first appealing to the district court for review. In its defense, Breckenridge argues that it was not required to seek administrative review because exceptions to the exhaustion requirement apply — any administrative relief would be futile, the issue presented a question of law that was not appropriate for administrative review, and exhaustion is not required under these circumstances because the interests underlying the exhaustion requirement are not implicated. We disagree.

¶ 61    Breckenridge asserts that it need not exhaust administrative remedies because the available procedures would not provide adequate relief. But, the code provides for the precise relief Breckenridge seeks. When determining the liability of a nonpaying party, like an OTC, the finance director has exclusive jurisdiction to assess unpaid taxes, interest, and penalties. B.T.C. § 3-1-32. When a party fails to pay outstanding taxes, the finance director is responsible for determining the amount owed. *Id.* The administrator can then initiate action to collect the amount due.

He may issue liens and warrants for the seizing and selling of real and personal property to satisfy the unpaid amount. B.T.C. § 3-1-32(C) (1), (2).

¶ 62    If Breckenridge was disappointed with the finance director's decision, it could have petitioned for an administrative hearing to contest the finance director's determination. B.T.C. § 3-1-35. Only after the finance director conducts a hearing may Breckenridge petition for district court review. B.T.C. § 3-1-36. Assuming the finance director determined the OTCs were liable for unpaid taxes, Breckenridge would have been awarded adequate relief had it exhausted the administrative requirements.

¶ 63    Breckenridge further argues that exhausting administrative procedures would have been futile because the OTCs publicly declared that they were unwilling to pay Breckenridge's sales tax. In support, Breckenridge points to two cases where the administrator publicly announced its position on the issue; therefore, the court found exhaustion would have been futile. *See Kuhn v. State Dep't of Revenue*, 817 P.2d 101, 104 (Colo. 1991) (there was no need to exhaust when the agency publicly stated it would not rule on any claim filed until the court had decided the

issue); *Anderson v. Bd. of Adjustment for Zoning Appeals*, 931 P.2d 517, 521 (Colo. App. 1996) (exhaustion would have been futile as the parties had notice of the zoning administrator's interpretation of the pertinent law).

¶ 64     Here, the finance director made no public declaration on the liability of the OTCs for unpaid sales taxes.  Further, a disagreement between parties in which one party publicly disclaims liability is insufficient grounds to determine that administrative remedies are futile.  Accordingly, we are unable to determine that administrative remedies would have been futile.

¶ 65     Second, Breckenridge contends exhaustion was inappropriate because the controversy involves a matter of law that the finance director did not have the authority or capacity to determine. However, this exception is limited and applies only to issues, such as constitutional matters, that "the agency lacks the necessary expertise to address" and those that "fall squarely in the province of the courts."  *United Air Lines*, 8 P.3d at 1213.  Here, the issue of determining a nonpaying party's tax liability falls squarely within the finance director's jurisdiction as it is the administrator's responsibility to determine tax liability, impose penalties and

interest, and initiate action to collect the debt due. *See* B.T.C. § 3-1-29. Undoubtedly, the finance director had the authority and expert capacity to determine the OTCs' sales tax liability.

¶ 66 Breckenridge also contends that exhaustion was not required as courts "will excuse a party's failure to exhaust available administrative remedies" in situations that "do not implicate the interests underlying the exhaustion requirement." *United Air Lines*, 8 P.3d at 1213. Breckenridge argues that the OTCs' offensive use of the exhaustion doctrine as a merits defense fails to promote the policy reasons justifying exhaustion.

¶ 67 However, a party's motive in raising another party's failure to exhaust does not undermine the policy interests justifying the exhaustion requirement. Exhausting administrative procedures in this case would have served a number of significant interests. For instance, the finance director would have had an opportunity to apply his expertise and may have arrived at a satisfactory determination — therefore ultimately conserving judicial resources. Even if the issue had later been appealed, prior administrative review would have helped to develop a factual record for the district court's review. *See id.* (developing a factual record, preventing the

interruption of the administrative process, preserving the autonomy of the agency, and conserving judicial resources are important policy interests of the exhaustion doctrine). Regardless of the OTCs' reasons for raising the issue of exhaustion, we determine that utilizing administrative procedures would have furthered a number of important interests underpinning the exhaustion requirement.

¶ 68    For these reasons, we conclude that the district court lacked subject matter jurisdiction to address Breckenridge's unpaid sales tax claim. Instead, Breckenridge must exhaust its own administrative procedures before seeking judicial review.

## V.    The District Court Properly Denied Breckenridge's Motion for Class Certification

¶ 69    Breckenridge also contends that the district court abused its discretion by denying Breckenridge's request for class certification of fifty-five Colorado home rule cities that also have ordinances levying a lodger's or accommodation tax for the purpose of imposing taxes, interest, and penalties on nonpaying parties.[2]

---

[2] Breckenridge also sought class certification for its sales tax claim, but the court dismissed it for failure to exhaust administrative remedies. We do not reach the question of whether a home rule

¶ 70    The district court denied Breckenridge's petition on multiple

grounds.  The court concluded that class certification was not

appropriate pursuant to C.R.C.P. 23(b)(2) as Breckenridge was

primarily seeking monetary damages.  Additionally, Breckenridge

failed to meet the requirements for C.R.C.P. 23(b)(3) certification

because there was no predominance of common questions nor was

class action the superior remedy.

¶ 71    Breckenridge argues that, contrary to the district court's

finding, it satisfied class certification requirements under C.R.C.P.

23(b)(2), or alternatively under C.R.C.P. 23(b)(3).  We are not

persuaded.

A.    Standard of Review

¶ 72    When determining whether the district court erred in denying

class certification, we review a district court's decision for an abuse

of discretion.  *Jackson v. Unocal Corp.*, 262 P.3d 874, 879 (Colo.

2011).  An abuse of discretion occurs if the decision is manifestly

arbitrary, unreasonable, or unfair, or when the district court

applies the incorrect legal standards.  *Id.*  A district court retains "a

---

municipality may be represented in a class action without a vote of
its citizens.

33

great deal of discretion in determining whether to certify a class action" under C.R.C.P. 23. *Id.* at 880 (quoting *Goebel v. Colo. Dep't of Insts.*, 764 P.2d 785, 794 (Colo. 1988)); *accord Garcia v. Medved Chevrolet, Inc.*, 263 P.3d 92, 97 (Colo. 2011).

### B. Relevant Law

¶ 73 We turn first to the prerequisites of class certification. To obtain certification, a party must allege that (1) the class is so numerous that joinder of all its members is impractical; (2) questions of law or fact are common among the class members; (3) the claims or defenses of the class representative are typical of the class; and (4) the class representative is capable of fairly and adequately protecting the interests of the class. C.R.C.P. 23(a); *Garcia v. Medved Chevrolet, Inc.*, 240 P.3d 371, 377 (Colo. App. 2009), *aff'd*, 263 P.3d 92 (Colo. 2011). "[S]o long as the trial court rigorously analyzes the evidence, it retains discretion to find to its satisfaction whether the evidence supports each C.R.C.P. 23 requirement." *Garcia*, 263 P.3d at 97 (quoting *Jackson*, 262 P.3d at 884).

¶ 74 After establishing the requirements above, a party must satisfy one of the three subsections of C.R.C.P. 23(b). As pertinent here,

C.R.C.P. 23(b)(2) certification "is appropriate for classes seeking predominantly injunctive or declaratory relief." *State v. Buckley Powder Co.*, 945 P.2d 841, 845 (Colo. 1997). But, certification is not prohibited where damages are sought in addition to injunctive and declaratory relief, so long as the damages are incidental to the other relief sought. *Id.* Even so, C.R.C.P. 23(b)(2) certification is not appropriate in cases where the final relief relates exclusively or predominantly to money damages. *Id.*

¶ 75 In contrast, C.R.C.P. 23(b)(3) is the appropriate avenue for parties seeking primarily monetary damages. *Id.* C.R.C.P. 23(b)(3) requires a petitioning party to demonstrate that (1) common questions of law or fact predominate over any questions affecting only individual members and (2) a class action is superior to other available remedies. *Garcia*, 240 P.3d at 377. When determining C.R.C.P. 23(b)(3) claims, a district court is afforded broad discretion in assessing whether a class action is the superior method to resolve the case. *Buckley*, 945 P.2d at 845.

### C. C.R.C.P. 23(b)(2) Certification

¶ 76 In the instant case, the district court engaged in extensive factfinding in its determination as to whether Breckenridge satisfied

the four prerequisites to class certification — numerosity, commonality, typicality, and adequacy of representation — and found that Breckenridge satisfied C.R.C.P. 23(a)'s threshold requirements. However, the court was unwilling to grant class certification under C.R.C.P. 23(b)(2) because Breckenridge was seeking primarily monetary damages.

¶ 77 While Breckenridge may have satisfied the four prerequisites to certification, we agree with the district court that Breckenridge primarily sought monetary damages. Breckenridge's argument that any potential monetary damages are only incidental to the declaratory relief it seeks is unavailing. Four of Breckenridge's five claims for relief expressly request relief in the form of monetary damages.

¶ 78 The fifth, although labeled as a request for declaratory judgment under C.R.C.P. 57, also predominantly seeks monetary relief. Scrutiny of Breckenridge's specific declarations reveals that each relates to the recovery of unpaid taxes:

> i. whether Defendants have a duty, under law, to collect Excise Taxes and/or Sales Taxes . . . ;

> ii.	whether the Excise Taxes and/or Sales Taxes are based on the Retail Rate;
>
> iii.	whether Defendants have a duty to remit these taxes to Plaintiff and the Class;
>
> iv.	whether Defendants have failed to fulfill their duty under law to remit these taxes to Plaintiff and the Class; and
>
> v.	whether, under the appropriate ordinance and/or rule, the amount of tax due and owing to Plaintiff and the Class is to be calculated as a percentage of the Retail Rate, without regard to service fees, operation expenses and other amounts currently deducted by Defendants.

Because the relief sought predominantly relates to money damages, we cannot determine that the district court abused its discretion in denying class certification under C.R.C.P. 23(b)(2).

### D.	C.R.C.P. 23(b)(3) Certification

¶ 79	Alternatively, Breckenridge argues that class certification is appropriate under C.R.C.P. 23(b)(3).  But, the district court found, and we agree, that Breckenridge failed to satisfy C.R.C.P. 23(b)(3)'s predominance and superiority requirements.

¶ 80	When reviewing a court's decision regarding whether C.R.C.P. 23(b)(3)'s requirements are satisfied, we will uphold a district court's determination, absent an abuse of discretion, so long as the court "rigorously analyze[d] the evidence presented."  *State Farm*

*Mut. Auto. Ins. Co. v. Reyher*, 266 P.3d 383, 387 (Colo. 2011). Accordingly, we must determine whether the court sufficiently examined the evidence presented.

¶ 81 The court first found that Breckenridge failed to advance a classwide method of proving the OTCs' liability for unpaid taxes. To satisfy C.R.C.P. 23(b)(3)'s predominance requirement, a party must demonstrate that legal or factual questions common to the class predominate over questions affecting individual members. This inquiry often turns on whether a "plaintiff advances a theory by which to prove or disprove 'an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position.'" *Farmers Ins. Exch. v. Benzing*, 206 P.3d 812, 820 (Colo. 2009) (quoting *Lockwood Motors, Inc. v. Gen. Motors Corp.*, 162 F.R.D. 569, 580 (D. Minn. 1995)).

¶ 82 Breckenridge argues that the common question affecting all class members is whether merchant model transactions are subject to tax liability. Because OTCs predominantly utilize the same merchant model throughout the state, Breckenridge contends that class certification is appropriate for fifty-five municipalities with similar accommodation and sales tax provisions. However, what

Breckenridge fails to consider, and what the district court notes, is the varying language used throughout the ordinances.

¶ 83    The district court explained that "one of the chief responsibilities in adjudicating this action will be to interpret applicable municipal accommodation tax statutes and then apply the prevailing factual circumstance to determine whether the plain language creates a tax responsibility flowing from [the OTCs] to [the class member]." This is especially problematic when the ordinances are not identical, or even significantly similar. In its analysis, the court noted at least six material differences amongst the ordinances regarding the taxable amount.[3] Additionally, the district court determined that the "ordinances utilize at least 20 different standards to determine who is obligated to collect and remit accommodation tax."[4] Consequently, the court was tasked with conducting "an exhaustive analysis of all 55 municipal statutes."

---

[3] For example, Burlington requires taxing the "entire amount charged for furnishing rooms or accommodations," whereas Larkspur taxes "the gross rental price of the lodging unit." Burlington Code of Ordinances § 3.28.010; Larkspur Mun. Code § 4-4-20.

[4] The court noted that if it were to determine who is obligated to collect and remit accommodation tax, it would have to decide what

¶ 84 Further, the district court examined a number of federal cases certifying class action that Breckenridge asserted involved similar actions against OTCs. *See City of Rome v. Hotels.com, L.P.,* Civ. A. No. 4:05-CV-249-HLM, 2007 WL 6887932 (N.D. Ga. May 10, 2011); *City of Goodlettsville v. Priceline.com, Inc.*, 267 F.R.D. 523, 527 (M.D. Tenn. 2010); *County of Monroe v. Priceline.com, Inc.*, 265 F.R.D. 659, 663 (S.D. Fla. 2010); *City of Gallup v. Hotels.com, L.P.*, No. 07-CV-00644 JEC/RLP, 2009 WL 9056102 (D.N.M. July 7, 2009); *City of San Antonio v. Hotels.com,* Civ. No. SA-06-CA-381-OG, 2008 WL 2486043 (W.D. Tex. May 27, 2008).

¶ 85 But, the court made clear that this particular situation is distinguishable from those because the fifty-five ordinances were not modeled after a common source, like a uniform enabling act. Consequently, unlike the federal cases where the court could utilize a single test to determine liability, the district court would have had to look to the plain language of each ordinance to determine the

---

the controlling standard would be. Would it be "whether Defendants are 'the lodging services vendor from whom the accommodations are rented,' as required by Rifle?" Rifle Charter & Mun. Code § 4-6-10. Or, "in Commerce City, the relevant question would be whether Defendants are a 'vendor or provider of hotel . . . services." Commerce City Code of Ordinances § 20-246.

OTCs' liability. *See Transponder Corp. of Denver v. Prop. Tax Adm'r*, 681 P.2d 499, 504 (Colo. 1984) (There is a "'long-standing rule of statutory construction' in Colorado . . . that tax statutes 'will not be extended beyond the clear import of the language used, nor will their operation be extended by analogy . . . .'" (quoting *Associated Dry Goods v. City of Arvada*, 197 Colo. 491, 496, 593 P.2d 1375, 1378 (1979))). Because the district court correctly analyzed the evidence presented, it did not abuse its discretion in finding that common questions do not predominate over questions affecting only individual members.

¶ 86　　In addition, because it is likely Breckenridge would have to provide evidence and arguments on fifty-five separate theories to demonstrate the OTCs' alleged liability for unpaid taxes, a class action is not the superior available method for the fair and efficient resolution of this issue.[5]

---

[5] Breckenridge also argues that class certification is appropriate for unnamed members who failed to exhaust administrative remedies. *See State v. Golden's Concrete Co.*, 962 P.2d 919, 924 (Colo. 1998) ("[U]nnamed class members need not exhaust administrative remedies so long as the named class plaintiff does so."). Because we have determined that class certification is not available under

## VI. Breckenridge's Civil Common Law Claims Are Conclusory and We Will Not Address Them

¶ 87 Lastly, Breckenridge, asserting without factual detail and specificity, contends that the OTCs converted tax dollars and conspired to do so. Because we have concluded that the accommodation tax does not apply to OTCs, there is no liability under these theories either. Moreover, Breckenridge fails to provide any reasons to support its bald assertions. These arguments are underdeveloped and are not properly presented for our review. *See People v. Wallin*, 167 P.3d 183, 187 (Colo. App. 2007) (declining to review the issues that were presented in the appeal "in a perfunctory or conclusory manner").

## VII. Conclusion

¶ 88 The judgment of the district court is affirmed.

JUDGE WEBB concurs.

JUDGE TERRY specially concurs.

---

C.R.C.P. 23(b)(2) or C.R.C.P. 23(b)(3), we need not address this argument.

JUDGE TERRY, specially concurring.

¶ 89     Though my reasoning differs from that of the majority, I concur in the result of Part III of the majority opinion, concluding that the district court did not err in granting summary judgment for the online travel companies (OTCs).  I also concur in Part IV, concluding that the Town of Breckenridge failed to exhaust administrative remedies; Part V, concluding that the district court did not err in denying class certification; and Part VI, declining to address Breckenridge's common law claims.

¶ 90     And, because I conclude — based on an analysis somewhat different from the majority's in Part II of the opinion — that the Breckenridge tax ordinance does not unambiguously apply to the markup charged by the OTCs, I concur in the overall result.

¶ 91     The majority concludes that the *City & County of Denver v. Expedia, Inc.*, 2017 CO 32 (*Expedia II*), is not dispositive in this case, because of differences in the Denver and Breckenridge taxing ordinances, as well as factual differences in the two cases.  I agree.

¶ 92     The result in *Expedia II* was driven by the language of Denver's tax code.  Both the plurality opinion and Justice Hood's concurring opinion in that case relied on the language of the Denver code to

conclude that the OTCs are liable for the tax because they "furnish" lodging.

¶ 93      The Denver tax code at issue in *Expedia II* clearly imposes a tax on those furnishing lodging.  Section 53-171(a) of the Denver Revised Municipal Code imposes a tax on the purchase of "lodging." "Tax" is defined in section 53-170(6) to include "taxes due from a vendor."  "Vendor" is defined in section 53-170(8) to include a person "*furnishing* lodging to a purchaser in the city" (emphasis added).  The tax is levied in section 53-171(b) on the purchase price paid or charged for "purchasing such lodging."  "Purchase or sale" is defined in section 53-170(4) to include "*furnishing* for consideration by any person of lodging within the city" (emphasis added).

¶ 94      Because both the plurality, *Expedia II*, ¶ 24, and Justice Hood, *id.* at ¶ 43, concluded that the OTCs *furnish lodging* (including rooms and accommodations), these portions of the Denver code clearly dictate that the OTCs are liable for the Denver tax.  *See id.* at ¶ 44 (Hood, J., concurring in the judgment) ("[E]xempting the OTCs from the definition of 'vendor' would leave a portion of the

price paid for lodging untaxed, thereby frustrating rather than effectuating the city council's clear intent to tax that purchase.").

¶ 95    But Breckenridge's tax code differs in substantial respects from Denver's. Breckenridge's code does not clearly impose the tax on the "furnishing" of rooms or accommodations. The only clear duty imposed on those who "furnish" lodging in the Breckenridge Town Code is to *collect* tax, as required by section 3-4-1, which says:

> [The] legislative intent of the town council in enacting this chapter is that every person who, for consideration, leases or rents any hotel room, motel room, or other accommodation located in the town shall pay and *every person who furnishes for lease or rental any such accommodation shall collect the tax imposed by this chapter.*

(emphasis added.)

¶ 96    It is undisputed that the OTCs *collected* tax. What is disputed is whether any portion of the OTCs' *markup* is to be included in the amount subject to the tax. *Cf. Expedia II*, ¶¶ 35, 36 (concluding that OTCs' markup was taxable under Denver tax code); *id.* at ¶ 45 (Hood, J., concurring in the judgment) (indicating that Denver's tax

45

code imposes "tax on the entire purchase price of any lodging" sold by vendors, including the OTCs).

¶ 97 Unlike Denver's code, Breckenridge's code does not impose a tax on the *furnishing* of lodging. As I understand the plurality opinion and Justice Hood's concurring opinion in *Expedia II*, the absence of such a provision in the Breckenridge code is a potential impediment to Breckenridge's ability to impose a tax on that markup.

¶ 98 Also unlike Breckenridge's code, Denver's code imposes a tax on the "purchase price paid or charged for *purchasing such lodging.*" Denver Rev. Mun. Code § 53-171(b) (emphasis added). The *Expedia II* plurality opinion concluded that the OTCs' markup is part of that purchase price paid or charged. *Expedia II*, ¶ 35. Justice Hood's separate concurrence appears to agree with the concept that the markup is part of that purchase price. *Id.* at ¶ 45 (reasoning that Denver's tax is imposed "on the entire purchase price of any lodging").

¶ 99 In contrast, section 3-4-3 of the Breckenridge code imposes a tax on the "price paid for the leasing or rental" of a room. The majority concludes that the term "leasing or rental" in the

46

Breckenridge code has significance implicating possessory rights on the part of the entity making the rental. *See supra* ¶ 42 (concluding that "only those with a possessory interest can furnish property for leasing or renting"). The majority may be correct in concluding that this is a distinguishing factor between the two ordinances. But in any event, it is not patent that the OTCs' markup is part of the price paid for "leasing or rental," as distinct from the price paid for *lodging.*

¶ 100   We are required to construe tax provisions narrowly as imposing tax only on those items clearly enumerated in the tax code, and ambiguities should be resolved against the government and in favor of the taxpayer. *City of Boulder v. Leanin' Tree, Inc.*, 72 P.3d 361, 367 (Colo. 2003).

¶ 101   I am therefore compelled to conclude that because the Breckenridge code does not explicitly impose a tax on the OTCs' markup, summary judgment was properly granted in favor of the OTCs.